Sidney **BLEEKER**, Plaintiff, Appellant,

v.

Michael **DUKAKIS**, et al., Defendants, Appellees.

No. 81–1378.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1981.

Decided Dec. 4, 1981.

---

Richard H. Gens, West Newton, Mass., with whom Gens & Gens, West Newton, Mass., was on brief, for plaintiff, appellant.

Stephen S. Ostrach, Asst. Atty. Gen., Government Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

BREYER, Circuit Judge.

In August of 1975, appellant Sidney Bleeker was hired as the administrator of the Woodland Nursing Home ("Woodland") in Methuen, Massachusetts, pursuant to an oral agreement with one of Woodland's owners. The agreement provided that ap-pellant "would continue as administrator for as long as he performed ... to the satisfaction of the owners." Following a declaration by the Governor of Massachu-setts in September of 1976 that there was a public health emergency at Woodland, the Commonwealth's Department of Public Health ("DPH") supplanted Woodland's pri-vate owners and took responsibility for the care of its patients.[1] Appellant continued to serve as administrator. He was required to report to officials in DPH, and to clear major transactions with them much as he had done previously with Woodland's pri-vate owners, but the terms and conditions of his employment were otherwise un-changed.

In April of 1978, DPH assigned one of its assistant commissioners to manage Wood-land. After visiting Woodland, meeting with appellant and examining certain docu-ments relating to Woodland's operations, the assistant commissioner determined that Woodland was being managed improperly and that appellant should be replaced. At a second meeting between the two, the assist-ant commissioner told this to appellant and offered him the opportunity to resign. Ap-pellant refused and was subsequently dis-charged with five weeks' salary in lieu of two weeks' notice and three weeks' accrued vacation. Appellant did not challenge the authority of DPH to fire him, and did not request a chance to improve his perform-ance. He claims he was told he had no right to a hearing or to seek review of the discharge decision, and in fact sought nei-ther.

Appellant subsequently brought this ac-tion under 42 U.S.C. § 1983, claiming that various state officials[2] deprived him of rights secured by the contract and due proc-ess clauses of the United States Constitu-

---

* Of the District of Massachusetts, sitting by des-ignation.

1. The state's takeover of Woodland occurred pursuant to Mass.Gen.Laws Ann. ch. 17, § 2A, which provides that, upon the declaration of a public health emergency by the Governor, the Commissioner of Public Health may "take such action and incur such liabilities as he may deem necessary to assure the maintenance of public health and the prevention of disease."

2. Appellant sued the Governor of Massachu-setts, the Commissioner of the Department of Public Welfare, the Commissioner of the De-partment of Public Health, and the Secretary of the Executive Office of Human Services.

tion. The district court granted motions for summary judgment dismissing Bleeker's claims. Bleeker then appealed, but only on the due process clause question.

■ We affirm the district court's dismissal of Bleeker's due process claim for the simple reason that, under controlling decisions of the Supreme Court and of this court, Bleeker's interest in employment at Woodland did not constitute "property" within the meaning of the Fourteenth Amendment. *See Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972); *Beitzell v. Jeffrey*, 643 F.2d 870, 873–77 (1st Cir. 1981). Bleeker characterizes his interest as a "legal entitlement to continued employment" but concedes that the private owners of Woodland (and hence the state officials in DPH) could dismiss him if, *in their judgment*, he did not perform satisfactorily. This criterion for dismissal is sufficiently broad and subjective to warrant characterizing Bleeker's employment contract as one that did not provide for removal only "for cause" but rather allowed for removal "at will." An interest in mere "at will" employment, of course, is not constitutionally protected "property." [3] *See Bishop v. Wood*, 426 U.S. at 344–47, 96 S.Ct. at 2077–79; *Beitzell v. Jeffrey*, 643 F.2d at 874.

Bleeker, to be sure, does not concede that his employment at Woodland was entirely "at will." He claims that his oral contract of employment incorporated certain written "Personnel Policies" that in effect converted his job into something of a tenured, or tenure-like, position. According to Bleeker, the Personnel Policies provided him with a right to a "warning and an opportunity to correct" before being discharged for unsat-

isfactory performance. Yet even if the Personnel Policies applied to Bleeker and provided him with the right he claims, both matters on which there is considerable doubt, the Policies are insufficient to convert his employment interest into constitutionally protected "property." The wide discretion that the oral contract of employment gave Woodland's owners (and hence the government) to dismiss Bleeker was not "seriously circumscribed," *see Beitzell v. Jeffrey*, 643 F.2d at 874, by the alleged right to a "warning and an opportunity to correct." [4] Thus, Bleeker's contract of employment, even as modified by Woodland's Personnel Policies, did not provide Bleeker with any basis for "rely[ing] reasonably on remaining employed," *id.*, when faced with an employer wishing to fire him. This lack of any reasonable expectation of continued employment suffices to establish the lack of "property" in the constitutional sense, and hence the lack of a viable due process claim.

■ This, of course, is not to say that the state could violate the terms of Bleeker's employment contract with impunity. But where state officials violate the terms of an employment contract that does not create a constitutional "property" interest in the job itself, the proper remedy lies in a suit for breach of contract, not a § 1983 action. As we said in *Medina Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir. 1981), "[a] mere breach of contractual right is not a deprivation of property without *constitutional* due process of law. *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). Otherwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case."

*Affirmed.*

---

**3.** By "constitutionally protected," we mean protected against discharge without appropriate procedural safeguards. Bleeker's employment interest might well be protected against action "based upon some constitutionally impermissible ground, such as racial, religious or sexual discrimination, or retaliation for assertion of rights guaranteed by . . . the Constitution." *Beitzell v. Jeffrey*, 643 F.2d at 876 n.13 (citation omitted).

**4.** *Cf. Bishop v. Wood*, 426 U.S. at 343–47, 96 S.Ct. at 2076–79 (Court accepts district judge's view that no guarantee of continued public employment lay in a city Personnel Ordinance expressly providing that an "employee whose work is not satisfactory . . . shall be notified in what way his work is deficient and what he must do if it is to be satisfactory.").