1392

Lisa D. UNGER, Appellant,

v.

NATIONAL RESIDENTS MATCHING PROGRAM; Temple University of the Commonwealth System; Temple University Hospital; Paul Boehringer, individually and as President of Temple University Hospital; Martin Goldberg, individually and as Dean of Temple University Medical School; Richard Redmond, individually and as Assistant to the President in charge of the Residency Program; Leon Malmud, individually and as Vice President of Temple University Hospital; Peter Liacouris, in his capacity as President of Temple University and ex-officio member of the Temple University Board of Trustees; and Richard Kozera, individually and as an officer of Temple University Hospital, Appellees.

No. 90–1385.

United States Court of Appeals, Third Circuit.

Argued Nov. 13, 1990.

Decided April 2, 1991.

Rehearing and Rehearing In Banc Denied April 26, 1991.

Kenneth J. Fleisher (argued), Miller & Fleisher, Philadelphia, Pa., for appellant.

Brenda Fraser, Leslie F. Muhlfelder (argued), Office of University Counsel, Temple University, Philadelphia, Pa., for appellees.

Before STAPLETON, HUTCHINSON and ROSENN, Circuit Judges.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Lisa D. Unger (Unger) appeals an order of the United States District Court for the Eastern District of Pennsylvania granting appellee Temple University Hospital's motion to dismiss Unger's 42 U.S.C.A. § 1983 (West 1981) claim. In her complaint, Unger sought to state a claim for the deprivation, without due process of law, of a liberty or property right protected under the Fourteenth Amendment of the United States Constitution. The district court held that the complaint failed to state a claim for which relief can be granted. See Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, we will affirm.

I.

In early February, 1989, Temple University and Temple University Hospital (collectively Temple or the Hospital) decided to discontinue its three-year graduate residency program in dermatology effective June 30, 1990. Unger, a physician licensed to practice medicine in the state of Pennsylvania, was scheduled to enter the Hospital's dermatology residency program in July, 1989. The Hospital informed Unger on February 10, 1989, that she would be unable to begin her dermatology residency at the Hospital because of the program's impending demise.

Unger was admitted into the Hospital's residency program in dermatology on October 5, 1988, through an application filed in June, 1988, with the National Resident Matching Program (Matching Program). Physicians seeking admission into graduate medical training programs do not apply directly to hospitals. Instead, students submit to the Matching Program a list of those hospitals offering their desired residency programs, ranked in order of preference. The Matching Program then transmits this information to the various hospitals, along with information about the students who have applied for the residencies. After evaluating the applicants, the hospitals set forth their own preferences among the students who have applied for residencies with them. Once the Matching Program receives this information from the hospitals, the Matching Program's computers go to work matching students with hospitals in a manner that is intended to reflect the preferences that both parties have expressed.

As a condition of participating in the Matching Program, each student and each school agree to be bound by the results of the match. Each student is accepted into only one school, and each school is provided with no more than the maximum number of students that it can accommodate. Thus, when Temple decided to close its graduate

residency program in dermatology just five months before Unger's scheduled date of enrollment, Unger and presumably other students were faced with the unexpected need to make other plans.

In the aftermath of this unanticipated development, Unger brought suit on June 14, 1989, in the United States District Court for the Eastern District of Pennsylvania against the Matching Program, Temple University, its Hospital and several Temple University and Hospital officials. In count one of her complaint, she attempted to state a claim under 42 U.S.C.A. §§ 1983 and 1985 (West 1981). The remaining counts of Unger's complaint set forth pendent claims for relief under state law.

On July 19, 1989, Unger voluntarily dismissed the Matching Program from her suit. Thereafter, Temple filed a motion on behalf of all remaining defendants to dismiss count one of Unger's complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). The district court agreed that count one of Unger's complaint failed to state a claim. As a result, the district court entered judgment on count one in favor of all defendants. The district court then dismissed Unger's pendent state law claims without prejudice, so that Unger could refile them in state court.

Unger appeals, arguing that the district court erred in holding that she failed to state a claim that Temple University and its Hospital violated her rights to procedural due · process under the Fourteenth Amendment.

In her complaint, Unger also said that Temple failed to assist her in securing admission into another dermatology residency program in Philadelphia after deciding to terminate its own program. She further claimed that Temple refused to give her funding to attend another dermatology residency program even though she believed that she would have been accepted into an alternate program had financial assistance been provided.

## II.

Instead of filing an answer, Temple moved to dismiss count one of the complaint for failure to state a claim upon which relief can be granted. See Fed.R. Civ.P. 12(b)(6). On April 19, 1990, the district court heard oral argument concerning Temple's motion to dismiss. Following the argument, the district court took a short recess and then ruled from the bench that it would dismiss count one of Unger's complaint with prejudice for failure to state a claim and would dismiss the remaining pendent state law counts without prejudice. On April 25, 1990, the district court issued a written opinion and final order to that effect. Unger filed a timely notice of appeal on May 21, 1990.

In her appeal, Unger raises essentially four issues. First, she argues that the district court erred when it failed to hold that her complaint set forth a property or liberty interest sufficient to withstand Temple's motion to dismiss. Second, Unger argues that the district court erred when it held that she received all process due her from Temple under the facts and circumstances described in her complaint. Third, she argues that the district court failed to assume all facts pleaded in her complaint to be true and failed to draw all reasonable inferences from those facts in her favor. Finally, she argues that the district court should have given her leave to amend her complaint before dismissing it.

## III.

We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C.A. § 1291 (West Supp.1990). Because Unger sought to state a claim under 42 U.S.C.A. § 1983, the district court exercised subject matter jurisdiction pursuant to 28 U.S.C.A. §§ 1331 and 1343 (West Supp.1990).

Since the district court dismissed Unger's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, our scope of review is plenary:

We accept as true the facts alleged in the complaint and all reasonable inferences

that can be drawn from them. Dismissal under Rule 12(b)(6) for failure to state a claim is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved.

*Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)). We review Unger's contention that the district court should have offered her the opportunity to amend her complaint for abuse of discretion. *See Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir.1990).

## IV.

In count one of her complaint, Unger alleged that Temple violated her "guaranteed constitutional rights under the 14th Amendment of the United States Constitution and 42 U.S.C. § 1983 and § 1985." At oral argument before the district court, Unger abandoned any claim under 42 U.S.C.A. § 1985 (West 1981). On appeal, the issues Unger raises focus solely upon her attempt to state a claim under 42 U.S.C.A. § 1983.

In relevant part, 42 U.S.C.A. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Unger alleged in her complaint that Temple acted under color of state law when it decided to terminate its Hospital's graduate medical residency in dermatology.[1]

The specific constitutional right that Unger says Temple violated is her right to procedural due process guaranteed by the Fourteenth Amendment. In her reply brief, Unger expressly disclaimed reliance upon any substantive due process rights. In relevant part, section one of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. Amend. XIV, § 1.

### A.

Unger argues that the district court erred when it failed to hold that her complaint set forth a liberty or property interest sufficient to withstand a motion to dismiss. As this Court stated in *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984):

The fourteenth amendment prohibits state deprivations of life, liberty, or property without due process of law. Application of this prohibition requires a familiar two stage analysis: we first must ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law."

In *Robb*, the Court also stated: "We should not affirm a dismissal at the pleadings stage, especially of a civil rights action, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 290.

We first address whether Unger's complaint alleged that Temple infringed upon a liberty interest protected under the Fourteenth Amendment. In *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923), the Supreme Court stated:

[Liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to

---

1. Temple is a state actor because it enjoys a "'symbiotic relationship' with the Commonwealth [of Pennsylvania]." *Molthan v. Temple University*, 778 F.2d 955, 960 (3d Cir.1985); *see also Braden v. University of Pittsburgh*, 552 F.2d 948, 955–65 (3d Cir.1977) (in banc) (holding that the University of Pittsburgh, which is also a member of the Commonwealth System of Higher Education, is a state actor). It does not contest that status.

acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

The Supreme Court further explored the contours of the protection the Fourteenth Amendment provides for liberty interests in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, an assistant professor whom a state university had hired without tenure under a one year contract was informed that he would not be rehired for the following academic year. *Id.* at 566, 92 S.Ct. at 2703–04. The teacher brought suit, alleging an infringement of property and liberty interests protected under the Fourteenth Amendment. *Id.* at 568–69, 92 S.Ct. at 2704–05.

The Supreme Court held the district court erred when it granted summary judgment in favor of the teacher on his procedural due process claims. The Supreme Court noted that the state university "did not make any charge against [the teacher] that might seriously damage his standing and associations in his community." *Id.* at 573, 92 S.Ct. at 2707. The Supreme Court continued:

> Similarly, there is no suggestion that the State [University], in declining to reemploy the respondent, imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State [University], for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case.

*Id.* at 573–74, 92 S.Ct. at 2707–08. The Supreme Court concluded, "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Id.* at 575, 92 S.Ct. at 2708.

In ruling upon Unger's complaint, the district court, in its memorandum opinion,

held that the complaint failed to allege a liberty interest cognizable under the Fourteenth Amendment. We agree with the district court that Unger's complaint fails to allege an actionable deprivation of liberty.

While the discontinuation of Temple's graduate residency in dermatology no doubt inconvenienced Unger because she was unable to commence her studies in July, 1989, her complaint fails to allege that Temple's actions seriously damaged her standing or associations in her community. Further, her complaint does not allege that Temple's actions imposed upon her a stigma or other disability that generally foreclosed her freedom to take advantage of other educational opportunities. Quite the opposite, Unger's complaint states that she believed she would have been accepted into an alternate graduate medical residency program in dermatology in the Philadelphia area, following Temple's notice to her that its program was closing, had financial assistance been available. It is for these reasons that we agree with the district court's holding that Unger failed to allege a protected liberty interest in her complaint.

This leaves us with the more difficult question of whether Unger's complaint alleged a protected property interest. In *Robb*, 733 F.2d at 292, we noted that "[p]roperty interests are not generally created by the Constitution." Instead, as the Supreme Court stated in *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."

In her brief on appeal, Unger argues that her complaint asserted the existence of two separate property interests. The first, she asserts, is her property interest in the pursuit and continuance of her graduate medical education. The second is an alleged property interest in a contract with Temple that arose out of her participation in the Matching Program.

Ruling upon Temple's motion to dismiss, the district court did not expressly reject

Unger's claim that she had a property interest in participating in Temple's dermatology residency program. Instead, as we discuss in Part IV.B. below, the district court held that even if Unger had a viable property interest she had no Fourteenth Amendment right to be heard.

In *Roth*, the Supreme Court addressed certain attributes of property interests that emerged from its prior decisions. The Court wrote: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, *quoted in Robb*, 733 F.2d at 292.

1.

■ Separate and aside from any contract she may have had with Temple, Unger contends that she has a property interest in the pursuit and continuance of her graduate medical education. Unger cites *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), *Stoller v. College of Medicine*, 562 F.Supp. 403 (M.D.Pa.1983), *aff'd w/o opinion*, 727 F.2d 1101 (3d Cir.1984), and *Ross v. Pennsylvania State Univ.*, 445 F.Supp. 147 (M.D.Pa.1978), in support of her contention that she has a property interest in the pursuit and continuance of her graduate medical education. These cases are inapposite. Each involved universities that took academic or disciplinary action against currently attending students. In *Ewing* and *Horowitz*, the Supreme Court assumed without deciding that students currently attending school had a property interest in the continuation and completion of their education. *See Ewing*, 474 U.S. at 220, 106 S.Ct. at 510–11; *Horowitz*, 435 U.S. at 84–85, 98 S.Ct. at 952–53; *see also Mauriello v. University of Medicine & Dentistry*, 781 F.2d 46, 49–50 (3d Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986). The district courts in *Ross* and *Stoller* held no more than that a currently attending student had a property right under Penn-

sylvania law in the continuation of their studies. *See Ross*, 445 F.Supp. at 152; *Stoller*, 562 F.Supp. at 414–15.

Divorced from any contract she may have had with Temple, Unger's claim that she has a property interest in the pursuit and continuance of her graduate medical education cannot succeed. Aside from the contract, Unger only has the abstract type of unilateral expectation that the Supreme Court in *Roth* held was insufficient to constitute a property interest protected under the Fourteenth Amendment. *See Roth*, 408 U.S. at 577–78, 92 S.Ct. at 2709–10 (stating that while professor had abstract concern in being rehired, his lack of tenure resulted in holding that professor did not have a property interest sufficient to trigger Fourteenth Amendment protection). Therefore, we hold Unger's attempt to state a claim arising out of a property interest in the pursuit and continuance of her graduate medical education fails as a matter of law.

2.

■ In her complaint, Unger also states that her participation in the Matching Program resulted in a contract between her and Temple. Thus, we must also decide whether Unger's contract with Temple constitutes a property interest protected under the Fourteenth Amendment.

Today it is beyond dispute that a contract with a state entity can give rise to a property right protected under the Fourteenth Amendment. *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972) (holding that contract of employment providing that professor could be terminated only for cause constituted property right protected by Fourteenth Amendment). Nevertheless, the Supreme Court has never held that every state contract gives rise to a property interest protected under the Fourteenth Amendment. *See id.* at 599, 92 S.Ct. at 2698–99 (noting that the non-tenured teacher's contract in *Roth* did not create a protectable property interest).

Thus, the question becomes where to draw the line.

We addressed this question recently in *Reich v. Beharry,* 883 F.2d 239 (3d Cir. 1989). In *Reich,* an attorney hired as special prosecutor in Washington County, Pennsylvania, brought an action under 42 U.S.C.A. § 1983 after the county refused to pay for his services as required under a contract the attorney had with the county. The district court dismissed the attorney's complaint for failure to state a claim upon which relief can be granted. We affirmed.

In addressing the attorney's claim that his contract with the county gave rise to a property interest protected under the Fourteenth Amendment, we wrote:

> So far as we have been able to determine, every court of appeals that has directly confronted the issue has concluded that although state contract law can give rise to a property interest protectible by procedural due process, not every interest held by virtue of a contract implicates such process. Many ... courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Reich,* 883 F.2d at 242 (citations omitted). In *Reich,* we noted that five other courts of appeals have addressed the question of when a contract right becomes a property right protected under the Fourteenth Amendment and recognized that not all contracts with a federal or state agency create a protectable property interest under the due process clauses of the Fifth or Fourteenth Amendments. An examination of the cases from the other courts of appeals is helpful.

In *Yatvin v. Madison Metro. Sch. Dist.,* 840 F.2d 412 (7th Cir.1988), the court addressed the same issue that we now consider. It wrote:

> The due process clauses of the Fifth and Fourteenth Amendments do not entitle a person to a federal remedy for every breach of contract by a state or federal agency. If they did, every breach of every public contract would be actionable in federal court. What is true is that a property right (or what the Supreme Court considers to be a property right for purposes of the due process clauses of the Fifth and Fourteenth Amendments) often is created by contract. A tenured professor in a public university has a Fourteenth Amendment property right in his job; the right is created by his tenure contract with the university. Thus, unless every breach of every public contract is to be actionable as a violation of constitutional rights, it is necessary to distinguish between "mere" contract rights and property rights created by contracts.

*Yatvin,* 840 F.2d at 416 (citations omitted).

In *San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir.1987) (citations omitted), the court wrote:

> Having recognized, as we must, that deprivation of contractual rights may create a claim under section 1983, we are faced with an equally compelling necessity to recognize that not *every* interference with contractual expectations does so. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim....
>
> Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection. "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Roth,* 408 U.S.

at 577, 92 S.Ct. at 2709; *Perry*, 408 U.S. at 602, 92 S.Ct. at 2700). Federal law accordingly may differentiate between contractual rights. Our problem, then, is to determine what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment.

The First, Second and Fifth Circuits are also in accord. *See S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 965–67 (2d Cir.1988) ("we hesitate ... to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a government contractor"); *Boucvalt v. Board of Comm'rs*, 798 F.2d 722, 729–30 (5th Cir.1986) (labeling as "unrealistic and contrary to common sense" the assertion that a due process hearing is required "before any public agency can ever terminate or breach a contract."); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981) (agreeing that not every contract with a state creates property interest).

Relevant Supreme Court cases and the cases we have cited from the First, Second, Fifth, Seventh and Ninth Circuits disclose two general types of contract rights that have been found to be property protected under the Fourteenth Amendment. As the Second Circuit noted in *S & D Maintenance*, 844 F.2d at 966, the first type arises where the contract confers a protected status, such as those "characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause. *Id.* at 967; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985) (recognizing a property right created by a for-cause termination provision); *Arnett v. Kennedy*, 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974) (same).

Unger has neither type of contract right, and her complaint does not allege a viable alternative. Unger alleges in her complaint that "[a] valid contract was formed between Plaintiff and the Hospital and the University ... when Plaintiff executed an Agreement (Exhibit "A") in which Plaintiff agreed to be bound by the results of the match" and that "[b]y the aforementioned contract ... the Hospital contracted to provide an accredited graduate Program in Dermatology for Plaintiff." Appendix (App.) at 15–16. However, Unger does not allege that Temple's contract allowed it to cancel its dermatology residency program only for cause nor does she allege facts indicating any protected status. Furthermore, the portion of her contract that she placed in the record would not support such allegations.

Unger's complaint does clearly state that at the time of her admission into Temple's dermatology residency program she was a physician licensed to practice medicine in Pennsylvania. It also states that she had already completed medical school at New York University and finished a residency in internal medicine at Pennsylvania Hospital in Philadelphia. *See* App. at 20. What is at stake for Unger is further specialization within a particular field of medicine. While we do not doubt the dermatology residency was important to Unger, we do not believe she has alleged a claim of entitlement to it in the face of Temple's unforeseen termination of the program. Therefore, we hold that Unger has failed to allege facts that indicate Temple's termination of its residency program in dermatology deprived her of any status or entitlement that the Fourteenth Amendment protects. Indeed, hers is one of the many contracts with state entities whose alleged breach does not support an action under 42 U.S.C.A. § 1983. As a result, Unger is left to pursue her rights under state law.

The concurrence would dispose of this appeal by holding that Unger has failed to allege a breach of her contract with Temple. While we agree with the concurrence that it is always preferable to avoid deciding issues of constitutional dimension, we believe that Unger has sufficiently alleged a breach to survive a Rule 12(b)(6) motion,

although we express no opinion as to whether such a breach has in fact occurred.

We share the concurrence's concern over whether Unger's actual contract with Temple will support her claim of a breach. However, since the complete contract is not a part of the record, we choose instead to rely upon the specific allegations contained in Unger's complaint. We note that Temple also had the option of placing the full contract in front of the district court before seeking the entry of judgment in its favor. While Exhibit A, the portion of the contract that is attached to Unger's complaint, does not support her claim of a breach, it also does not contradict such a claim. Thus, we must accept as true the allegation in Unger's complaint that Temple breached its contract with her.

### B.

Instead of resolving whether Unger's complaint alleged facts sufficient to state a property interest, the district court held that if Unger had a property interest Temple afforded her all the process due under the circumstances Unger set forth. In light of our holding that Unger's complaint fails to state a liberty or property interest protected under the Fourteenth Amendment, it is unnecessary for us to review the district court's holding that Unger received all process due under the circumstances.[2]

### C.

We next consider Unger's argument that the district court failed to assume all facts pleaded in her complaint to be true and failed to draw all reasonable inferences from those facts in her favor. She states correctly the standard under which a district court must adjudicate a motion to dismiss for failure to state a claim upon which relief can be granted. *See Markowitz*, 906 F.2d at 103.

Unger's argument that the district court failed to apply the proper standard to de-

cide Temple's motion to dismiss can be traced to Temple's improper attempt to place before the district court additional facts favorable to it in its motion to dismiss. In support of the district court's holding, Temple argues in its brief on appeal that it closed its residency program in dermatology for financial reasons. Temple advanced the same argument before the district court in support of its motion to dismiss.

■ When a district court decides a motion to dismiss for failure to state a claim as well as when a court of appeals reviews such a dismissal, both the district court and the court of appeals must accept as true the facts pleaded in the complaint and any reasonable inferences derived from those facts. *See Markowitz*, 906 F.2d at 103. Thus, we cannot consider, at this stage of the proceedings, Temple's claim that it closed its dermatology residency program for financial reasons unless Unger's complaint so alleges.

Unger's complaint set forth no reason for the closure of Temple's program. Further, the letter from a Temple official informing Unger of the program's discontinuation, which Unger incorporated into her complaint, does not state that the program would be closed for financial reasons. Instead, the letter merely states that "the residency program in Dermatology at Temple University Hospital will not be supported beyond June 30, 1990," App. at 22, but it does not give any reason for the decision. If Temple wished to introduce the reasons behind the closure of its graduate residency program in dermatology, it should have done so by filing a motion for summary judgment.

Unger says the following passage from the district court's memorandum opinion shows it relied on Temple's proffered reason for closing its dermatology program:

[N]othing in the complaint supports the inference that Temple, by advertising its

**2.** As a result of our holding that no process was due Unger because she suffered no deprivation of a protected liberty or property interest, we do not address the Supreme Court's recent opinion in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct.

975, 108 L.Ed.2d 100 (1990), its impact upon *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), or the adequacy of post-deprivation remedies to provide all process that is due.

dermatology residence program and participating in the matching process, made a commitment to those, like Dr. Unger, who were matched, to conduct a dermatology residence program in July of 1989 without regard to supervening University requirements, fiscal or otherwise.

App. at 26–27. We disagree with Unger that this passage indicates that the district court accepted Temple's assertion that it closed the dermatology program for financial reasons.

We have independently reviewed Unger's complaint and concluded that the district court did not err in dismissing her complaint for failure to state a claim upon which relief could be granted. Furthermore, the district court's memorandum opinion shows that it applied the proper standard in making its decision. It accepted all the facts set forth in Unger's complaint as true and then afforded her the benefit of any reasonable inferences that followed from those facts. The district court properly refused to rely upon additional facts Temple sought to bring before the court in its motion to dismiss.

### D.

■ Unger's final argument is that the district court abused its discretion in failing to grant her leave to amend her complaint instead of dismissing it for failure to state a claim. She relies upon *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922–23 (3d Cir.1976) (per curiam). In *Rotolo*, the vague and conclusory nature of the complaint precluded any examination of the constitutional violation alleged therein. This Court held that when a civil rights complaint contains "vague and conclusory" contentions, a district court must liberally allow opportunity for amendment pursuant to Federal Rule of Civil Procedure 15(a) before ruling that the complaint fails to state a claim upon which relief can be granted.

Here, the district court had no difficulty in comprehending Unger's civil rights claim. It closely examined the complaint and afforded her counsel an opportunity to present his arguments at length concerning the nature of Unger's property interest in Temple's dermatology program and her liberty interest in her admission to that program. Paradoxically, Unger's argument suffers because her complaint is a model of clarity compared to the complaint at issue in *Rotolo*.

Unger seizes on the district court's statement in its memorandum opinion that paragraph thirty-four of the complaint contains "conclusory language." That paragraph stated:

By establishing the Program and soliciting residents, Defendants represented to Plaintiff that funding for such Program would be available and in unilaterally cancelling the Program and refusing assistance to Plaintiff, Defendants knew that Plaintiff would be irreparably and substantially harmed, yet Defendants persisited [sic] in their actions, for which acts Defendants should be responsible for punitive damages so that Defendants and all others who come to know the events cited in the foregoing paragraphs of this Complaint will never again be tempted to engage in such acts or to permit such conduct.

App. at 12–13.

Although some parts of this paragraph may be more rhetoric than logic, the tenor is not too difficult to follow. Taking Unger's complaint as a whole, the record shows that the district court had no trouble understanding the allegations therein contained. Thus, *Rotolo* furnishes no support for Unger's argument that the district court abused its discretion in not offering her an opportunity to amend before dismissing her complaint for failure to state a claim. This is not a case in which the district court dismissed Unger's complaint because it was vague or conclusory; rather, it dismissed Unger's complaint because the claim stated was one not cognizable under the law.

### V.

Temple's decision to close its graduate residency program in dermatology visited hardship upon Unger. To obtain relief

from that hardship, she tried to state a claim under the due process clause of the Fourteenth Amendment to the Constitution. To succeed, Unger had to include facts in her complaint from which we could infer that she had a liberty or property interest in admission to Temple's dermatology program. In addition, she had to establish that the deprivation of any liberty or property interest occurred without due process. Our review of her complaint has led us to conclude that Unger has failed to allege a property or liberty interest protected under the Fourteenth Amendment. Therefore, we will affirm the district court's order dismissing Unger's constitutional claim with prejudice and dismissing her pendent state law claims without prejudice.

STAPLETON, Circuit Judge, concurring:

I concur in the judgment of the court and join all of the court's opinion except Section IV A 2.

As I read it, the court's opinion implies that the due process clause would be implicated if Unger had alleged either that Temple had promised her unconditionally to maintain its graduate dermatology program until her timely graduation or that it had promised her it would not close that program before her graduation absent good cause. I find it unnecessary to take a position on whether Unger's complaint would implicate a due process clause if she had made either of these allegations.

Unger sets forth her contract claim in the following paragraphs of the complaint:

39. A valid contract was formed between Plaintiff and the Hospital and the University and between Plaintiff and NRMP when Plaintiff executed an Agreement (Exhibit "A") in which Plaintiff agreed to be bound by results of the match (i.e. that Plaintiff would undertake her Dermatology residency/graduate medical education only at the institution to which she was "matched" under the auspices of the NRMP).

40. By the aforementioned contract, Plaintiff promised to be bound to attend the Hospital, if she was "matched" there, to the exclusion of all other accredited Programs and in exchange for this promise, NRMP "matched" Plaintiff at the Hospital and the Hospital contracted to provide an accredited graduate Program in Dermatology for Plaintiff.

While paragraph 40 read alone could be interpreted as alleging that Temple promised unconditionally to provide Unger with three years of graduate dermatology education, the incorporated Exhibit A contains nothing suggesting in any way that such a promise was made. Thus, the complaint on its face refutes the conclusory allegation of such a promise.

In the briefing and argument before the district court and this court, Unger has asserted that Exhibit A was not the only contract between the parties. Despite extensive questioning from the district court and this court, however, Unger has identified no other source of a contractual right to insist upon Temple keeping its program open. Thus, neither the complaint nor anything else in the record refers to or evidences such a right.

While the record reveals that Unger may have had a contractual relationship with Temple, that alone is not enough to implicate due process. Where a contract is relied upon to provide the necessary property interests supporting a due process claim, no *deprivation* is alleged unless the plaintiff can point to a *breach* of the contract. Here, Unger is unable to point to a contract right of which she was deprived by Temple's termination of the program. This requires rejection of her due process claim.