**LINAN–FAYE CONSTRUCTION CO. INC., Plaintiff,**

v.

**HOUSING AUTHORITY OF the CITY OF CAMDEN, Defendant.**

Civ. A. No. 90–4651.

United States District Court, D. New Jersey.

Aug. 24, 1992.

Lundy, Flitter, Beldecos & Hardy, P.A. by Cary L. Flitter, Cherry Hill, N.J., for plaintiff.

Freeman, Zeller and Bryant by Mark D. Casewell, Cherry Hill, N.J., for defendant.

## OPINION GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

IRENAS, District Judge.

This matter comes before the Court on defendant's motion for partial summary judgment under Fed.R.Civ.P. 56(c) seeking to dismiss Count Three of the Complaint on the ground that plaintiff cannot prevail as a matter of law on its claim under 42 U.S.C. § 1983. For the reasons hereinafter set forth, this motion will be granted.

## BACKGROUND

This long-standing dispute arose over the September 30, 1988 award to plaintiff, Linan–Faye Construction Co., Inc. ("Linan–Faye"), of a construction contract in the amount of $4.264 million by the defendant, the Housing Authority for the City of Camden ("HACC"), for the rehabilitation of 244 low-income housing units at the McGuire Gardens Project in Camden. Plaintiff was apparently the low bidder, underbidding the next highest proposal by approximately $600,000.

In October and November disagreements arose with respect to some of the specifications, and HACC attempted to re-bid the project to find a new contractor. To enforce its rights to go forward on the project, plaintiff filed a complaint and order to show cause on December 20, 1988.

On December 21, this court entered a Temporary Restraining Order to prevent the re-bidding. On December 27, the parties met to resolve the matter, and the case was settled pursuant to a Stipulation of Settlement and Order of Dismissal with Prejudice ("Settlement Order"), which was approved and entered by this Court on January 23, 1989. The Settlement Order required the parties to execute the contract documents relating to the project, but Paragraph 2 specified that:

Nothing herein shall be construed to interpret nor pass upon the language of the contract, nor the obligations of the respective parties thereunder; nor shall this Stipulation and Order be construed to alter or amend the contract terms.

For purposes of this motion the court accepts plaintiff's allegation that it fully signed all the required contract documents on January 5, 1989, (the "Contract") but did not receive back a copy countersigned by defendant until November 29, 1989.

Paragraph 16 of the General Conditions to the Contract provide for a termination in the event of a default by the contractor, while Paragraph 17 allows a termination without cause whenever defendant determines that such termination "is in the best interest of" the defendant. This paragraph

is captioned "Termination for Convenience."

Disputes quickly broke out again. Defendant asserts that plaintiff presented numerous problems or potential problems that it insisted be resolved by HACC before it would start work. Linan–Faye, on the other hand, asserts that it wanted to start work throughout 1989 but never received the signed contract documents or a Notice to Proceed from HACC.

HACC issued a Notice to Proceed on November 22, 1989, directing plaintiff to repair certain plumbing problems that were part of the over-all contract, but Linan–Faye refused to proceed piece-meal, insisting that it would not begin until a certain number of vacant buildings were available at the same time so it could achieve economies of scale.

HACC then proposed pulling the plumbing portion out of the contract, and subsequently proposed a complete buy-out of Linan–Faye's contract. The parties discussed the possibility of a buyout from early 1990 until July, 1990, at which time HUD informed HACC that it would not approve a buy-out. By letter of July 23, 1990, HACC reinstated the previous Notice to Proceed and set a start date 30 days hence.

A preconstruction meeting was held on September 6, 1990 at which Linan–Faye allegedly stated that it could not start work until the contract price was increased to reflect the passage of time. HACC under instructions from HUD, insisted that Linan–Faye must begin work before the price increase issue could be addressed. HACC asserts that because Linan–Faye still refused to begin work at that point, HACC elected to terminate Linan–Faye's contract and did so by letter dated September 25, 1990. After objecting to HACC's termination, Linan–Faye filed the instant suit on October 26, 1990.

## DISCUSSION

The standard for granting a motion for summary judgment under Fed.R.Civ.P. Rule 56(c) is demanding and stringent. *Wilson v. Sullivan,* 709 F.Supp. 1351

(D.N.J.1989). Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has stated that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted) (internal quotations omitted).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility but to determine "whether there is a genuine issue for trial." *Id,* at 249, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict for that party. *Id.* Although the moving party bears the initial burden of informing the district court of the basis for its motion, there is no requirement in the Rule that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* at 248, 106 S.Ct. at 2510. Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the non-moving party." *Id.*

Plaintiff argues that it had a property interest in the contract awarded to it by defendant, and that defendant's subsequent termination without a notice and

hearing deprived plaintiff of its property without due process of law and in violation of the Equal Protection clause. Accordingly, plaintiff argues the termination violated its rights under the fourth, fifth and fourteenth amendments of the Constitution. Count Three of the Complaint has asserted this federal civil rights claim under 42 U.S.C. § 1983.

■ The court need not address the requirements of either the Due Process Clause or the Equal Protection Clause, because under the Third Circuit's recent decision in *Unger v. National Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991), plaintiff has failed to demonstrate that the contract established a property interest which is protectible under the fourteenth amendment. As observed by the Third Circuit:

> So far as we have been able to determine, every court of appeals that has directly confronted the issue has concluded that although state contract law can give rise to a property interest protectible by procedural due process, not every interest held by virtue of a contract implicates such process. Many ... courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. **We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.**

*Unger*, at 1398 (emphasis added) (quoting *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989).

Other Courts of Appeals have expressed similar reservations about attempts to characterize seemingly ordinary breach of contract claims as federal civil rights claims under 42 U.S.C. § 1983. For example, one court explained, "[W]e hesitate ... to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a government contractor." *S*

*& D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988). "[U]nrealistic and contrary to common sense" is the assertion that a due process hearing is required **"before any public agency can ever terminate or breach a contract."** *Unger* at 1399 (emphasis added) (internal quotations omitted) (quoting *Boucvalt v. Board of Comm'rs*, 798 F.2d 722, 729–30 (5th Cir. 1986)).

More factually similar to the instant case than *Unger* is *S & D Maintenance Co., Inc. v. Goldin, supra*, in which the Second Circuit, affirming a summary judgment entered by the trial court, held the contractor had no protectible property right in the continuation of its parking meter service contract.

*S & D Maintenance* involved a contract for the repair and maintenance of on-street parking meters which, like the Contract, contained a provision permitting termination for cause and another provision allowing the City to end the contract without cause. The City gave notice that it was acting to terminate for cause, but almost three months later changed its approach and acted to terminate under the provision allowing for termination without cause. *Id.* at 965.

At the time of termination S & D Maintenance was allegedly owed money for past services and argued that the loss of the right to perform future services and the refusal of the City to pay for past services constituted a property interest sufficient to provide the due process underpinning to a § 1983 action.

After noting that "all interests warranting procedural protection as property rights require something in addition to their importance to the claimant ..." (*Id.*), the court went on to observe that "An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interest the Supreme Court has thus far viewed as 'property' entitled to procedurally due process protection." *Id.* at 966.

In its ruling the *S & D Maintenance* court emphasized the City's right to terminate S & D without cause, and found no problem raised because the City first pur-

ported to terminate the contract for cause or may have constructively terminated the contract. "Neither circumstance affects the constitutionally dispositive considerations—that the contract did not create a property interest in non-termination in the first place." *Id.* at 968.

Even S & D's claim for payment for past due services was insufficient to create the predicate property interest, the court noting that there was clearly a dispute which required investigation. In the instant matter plaintiff has not suggested that there is any New Jersey statute which limits the right of the defendant to terminate the contract for cause or otherwise. At best, plaintiff has an action for common law damages if its theory that defendant is not entitled to the benefits of Paragraph 17 of the Contract (the subject of another motion which was denied without prejudice to its later renewal) should hereafter prevail.

■ During oral argument plaintiff suggested that, because its bonding capacity was tied up in the Contract and it was unable to take other jobs during this litigation, a liberty interest is implicated which would be protectible under § 1983. Apart from the fairly obvious fact in the record that plaintiff could have received back its bond merely by agreeing to a voluntary termination with defendant, this kind of financial loss is not constitutionally protectible.

> "Though S & D claims that the City's actions leave it without sufficient capital to pursue *any* line of work, the remedy lies in an action for damages under the contract. The fact that consequential damages of the alleged breach may be severe cannot convert a contract claim into a deprivation of liberty."

*Id.* at 970.

S & D Maintenance was cited and relied upon by the Third Circuit in *Unger. See also Inner City Leasing & Trucking v. City of Gary, Ind.,* 759 F.Supp. 461 (N.D.Ind.1990) (explaining contractor with equipment and operator contract had no protectible interest in contract under the fourteenth amendment); *John's Insulation v. Siska Const. Co.,* 774 F.Supp. 156, 161 n. 6 (S.D.N.Y.1991).

It should be noted that the cases have identified two general types of contract rights that do create property interests protectible under the fourteenth amendment. The first arises from those contracts which confer a "protected status, such as those characterized either by extreme dependence as in the case of welfare benefits, or permanence in the case of tenure, or sometimes both as frequently occurs in the case of social security benefits." *Unger,* at 1399 (citing *S & D Maintenance,* at 966).

The second, although related, type of contract which has been held to create a property interest protected by the Fourteenth Amendment arises in the context of tenured public employees, *i.e.* those who can only be terminated for cause. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Courts have repeatedly noted the significance of the private interest in retaining employment and the concomitant need of an employee who can only be terminated for cause to be able to "invoke the discretion of the decisionmaker." *Boucvalt v. Board of Com'rs of Hosp. Service Dist.,* 798 F.2d 722, 729.

Even if the *Roth–Loudermill* line of authority were deemed to apply outside the context of public employees, it would be of little help to plaintiff. Linan–Faye's contract expressly provided for termination at the convenience of the defendant, much like the teacher in *Roth* who was found to have no protectible property interest because she was untenured and could be terminated at will. Whatever property interest plaintiff may have had, it does not rise to a sufficient level of certainty or dependency to merit fourteenth amendment protection.

The court will enter an order in conformance with this opinion.