[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a contractual dispute between the plaintiff (Pace), the accepted bidder on a contract to construct an addition to a state building on the campus of Western Connecticut State University in Danbury and the State Department of Public Works (DPW). Pace has brought the instant action seeking a temporary and permanent injunction and declaratory relief against the defendant DPW for what it claims was an unjustified termination of said contract for cause.
The operative facts as gleaned from the pleadings, affidavits and exhibits in support of the motion to dismiss are that in September, 1995 Pace was awarded a contract to construct an additions and alterations to Memorial Hall on the campus of Western Connecticut State University, a state run educational institution. On or about December 12, 1995 as part of the construction process Pace poured a concrete waffle slab for the first floor of said multiple story building. According to contract specifications this slab was to attain a compression weight of 4,000 p.s.i. within 28 days of being poured. However, subsequent tests disclosed that these specifications were not completely attained possibly due to incomplete curing because of severe weather conditions. Meetings were held to resolve this problem without success and on March 26, 1996 DPW demanded that all deficiencies be corrected forthwith. Not being satisfied with Pace's response, on April 9, 1996, DPW notified Pace that the CT Page 10030 contract was terminated for cause citing three provisions in the default section of the contract. The default section in question also contained a provision authorizing termination without cause at "the convenience of" DPW. However, DPW elected not to terminate the contract for its convenience but for cause under three specific default provisions. No hearing or other formalized proceedings were held prior to termination. Pace subsequently brought the instant action for injunctive and declaratory relief.
Defendant has filed this motion to dismiss claiming the doctrine of sovereign immunity bars plaintiff's action which it characterizes as nothing more than an ordinary breach of contract dispute which does not give rise of any constitutionally protected property interest in this contract. Therefore sec.4-61[1] of the CGS is the only vehicle by which plaintiff can avoid the bar of sovereign immunity. Consequently the court is without subject matter jurisdiction to entertain this action.
Pace argues that the termination of the contract for cause violated a property interest in the continuation of said contract which is protected by Article First, section 10[2] of the Connecticut Constitution and that the defense of sovereign immunity is therefore not a bar to such actions or the extraordinary remedies it seeks to enforce its rights thereunder. The plaintiff further alleges in its complaint and here argues that the effect of such termination "for cause" will permanently and irreparably injure its ability to successfully bid and/or obtain future state construction contracts, the company's life blood, and consequently the remedies available under 4-61 are totally inadequate. While the defendant concedes that sovereign immunity may not bar actions against the state where a constitutionally protected property right is implicated, it steadfastly maintains that the contract in question does not rise to that level. Consequently, Pace's only remedy is under section 4-61 which does not permit the extraordinary relief plaintiff seeks.
Because of the latter mentioned arguments the issue of the appropriateness of the remedies is raised. The court addresses that issue first as it is the simplest to address. Suffice it to say that it is well settled that in a constitutional democracy the doctrine of sovereign immunity will not bar suits against the sovereign where its officials have acted in excess of their authority. Doe v. Heintz, 204 Conn. 17, 31 (1987). "The absolute bar of actions against the state has been modified by statute and CT Page 10031 by judicial decisions. Krozser v. New Haven, 212 Conn. 415, 420-21; cert. den. 493 U.S. 1036, 110 SCt 757; 107 Led 2nd, [L.Ed.2d], 774 (1989). The plaintiff claims that this is precisely what this suit is about and the court agrees.
With regard to defendant's claim that both injunctive and declaratory relief are inappropriate, our supreme court has held to the contrary. In the recent case of Savage v. Aronson,214 Conn. 256 (1990) the court said:
 "We have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment." Id. 266.
It is therefore clear that under certain circumstances both a law suit against the state can be brought inspite of the doctrine of sovereign immunity and the remedies of injunction and declaratory judgment are not barred by that doctrine.
The remaining and more difficult issue in this case is whether the termination of a construction contract with a state agency gives rise to a constitutionally protected property interest in its continuation, where the state chooses to terminate it for cause and where the effects of such termination upon the contractor will have significant lasting effects upon the contractor far beyond the immediate financial detriment? If it does, then the court has subject matter jurisdiction of this case.
Defendant's motion in effect challenges plaintiff's standing
to raise the question of due process under Article First, sec 10
in the context of governmental construction contract disputes. Therefore, in order for plaintiff to prevail on this challenge it must allege a colorable claim of injury to an interest which isarguably regulated by statute or protected by Article First,sec. 10. Reitzer v. Board of Trustees of State Colleges, 2 Conn. App. 196,200 (1984) citing Data Processing Service v. Camp, 397 U.S. 150,153 (1969) and Ducharme v. Putnam, 161 Conn. 135, 139
(1971). The plaintiff has successfully accomplished that task.
Before explaining the rationale for this conclusion, the court finds it necessary to express the following caveat: it is not the intention of this court to nor should this decision be CT Page 10032 interpreted as constitutionalizing every contract with a governmental agency. The courts have been very circumspect in according due process protection to contracts with governmental entities. See, S D Maintenance Co. v. Goldin, 844 F.2d 962, 967
(2nd Cir., 1988). This is because in the ordinary commercial contract the role of the government contractor is merely temporary while constitutional protection is usually associated with a status with some degree of permanency. See, Perry v.Sindermann, 408 U.S. 593, 92 SCt 2694, (1972) [tenured teaching position]. Furthermore, it is unrealistic and contrary to common sense that a due process hearing be required before any public agency can ever terminate or breach a contract. Unger v. NationalResidents Matching Program, 928 F.2d 1392, [928 F.2d 1392], 1399 (3rd Cir., 1991); Boucvalt v. Board of Comm'rs798 F.2d 722, [798 F.2d 722], 725-730 (5th Cir., 1988);Bleeker v Dukakis, 665 F.2d 401, [665 F.2d 401], 403 (1st Cir., 1981). The mere fact that such a contract may confer some legal rights under state law is not in itself enough to place all such contracts within due process protection. Unger v.National Residents Matching Program, supra., 1398.
Nevertheless, under limited circumstances, the courts have found that such contracts do give rise to a constitutionally protected status. In order to acquire such status, the interests in question must be distinguished from the ordinary garden variety of contract where its importance is in its mere commercial value to the contractor. S D Maintenance Co. v.Goldin, supra, 965-966. Something more than a unilateral
expectation is required; something more than an abstract need or desire for it is essential. S D Maintenance Co., Inc., supra,
966; Fennell v. City of Hartford, 238 Conn. 809, 820 (1996). Such interest must possess a quality of permanence, a continuing status, in the nature of a legitimate claim of entitlement. S DMaintenance Co., Inc, Id.; Walentas v. Lipper,862 F.2d 414, [862 F.2d 414], 418-419 (2nd Cir., 1988). Contracts that give rise to such protected status generally fall into two types: those characterized by a quality of either extreme dependence such as in the case of welfare benefits and those with interests somewhat related where the contract itself includes a provision that the governmental entity can terminate the contract only for cause. Unger v. National Residents Matching Program,supra, 1399.
Now the defendant relies heavily upon the fact that the S DMaintenance court held that the maintenance contract with the City of New York did not implicate a protected property interest and analogizes its results to this case. A closer reading of that CT Page 10033 case will indicate why the defendant's reliance is misplaced. That case's importance to this dispute is not in its result, but in its rationale. The S D court enunciated the parameters of the criteria for determining whether a protected property interests exists in the area of public contracts. The test there indicated is that the interest must be more than a mere unilateral expectation of benefits, and must possess a quality of permanency or extreme dependency. S D Maintenance Co., Inc.,supra, 966.
Like the present case the S D contract contained both conditional and unconditional provisions for termination. However, the fact that distinguishes S D from the present case is that the termination of the S D contract was predicated on an "unconditional cause" provision. Id 968, while the termination in the instant case is predicated on a "for cause" provision. This difference is significant because in applying its criteria, the S D court said that termination predicated on the unconditional provision was fatal to plaintiff's protected property rights theory. More importantly, the court also said that S D did have a ". . . property interest in not being terminated on the grounds that it is in default. . . ." Id. 968. Although reaching the same result as did the S D court, theUnger court in the third Circuit also adopted the this rationale.Unger v. National Residents Matching Program, supra, 1399.
Furthermore, in explaining this conclusion the S D court said that the inclusion of the bifurcated contractual scheme of two types of termination options was an acknowledgment by the city of the serious consequences upon contractors' eligibility for future work with the City pursuant to their own Administrative Code[3] should a contractor default on a contract. Id.
In the present case the single termination article contained both specific default conditions as well as a provision for termination for convenience (termination at will). DPW chose to terminate the plaintiff for specified causes — not at its convenience. Therefore, under the S D criteria, such contract amounted to a limited property interest, if there was also an element of bi-lateral expectancy, entitlement or dependence implicit in the agreement.
This latter requirement was satisfied in this case just as the S D court suggested it would have been in that case: by the CT Page 10034 fact that state statutes would impose serious and long term harm to contractors who defaulted on their obligations under the contract. In this connection we need only look at our own state statutes on this subject. Section 4b-91 of the CGS provides in pertinent part that "[e] very contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building . . . shall be awarded to the lowestresponsible and qualified general bidder. . . ." (Emphasis added) Section 4b-92 defines "lowest responsible and qualified bidder" as
 "the bidder whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary to faithful performance of the work based on objective criteria considering past performance and financial responsibility. . . . In considering past performance the awarding authority shall evaluate the skill, ability and integrity of the bidders in terms of the bidders' fulfillment of contract obligations and of the bidder's experience or lack of experience with projects of the size of the project for which bids are submitted." (Emphasis added.)
Finally, section 4b-94 states that "the awarding authority shall reserve the right to reject any or all such general bids, if (1) the awarding authority determines that the general bidder or bidders involved are not competent to perform the work as specified, based on objective criteria established for making such determinations, including past performance and financial responsibility." (Emphasis added.)
It is obvious from a reading of these provisions a contractor proposing to do business with the state should have grave concern if he had been terminated on a previous contract for cause. Because of the emphasis that the statutes place on past performance in fulfilling contract obligations, it is hardly likely that a contractor who was once discharged for cause would ever get the chance to do it again! Clearly, both parties expected that the contract would continue so long as the plaintiff performed its obligations thereunder flawlessly. The expectation is hardly unilateral inasmuch as both parties fully anticipate the harm that would likely befall a defaulting contractor.
Thus when considering the "for cause" termination provisions CT Page 10035 relied upon by the state to terminate the instant contract together with the implications of the above mentioned statutes upon the plaintiffs potential ability to obtain future contracts with the state if terminated for cause, it becomes abundantly clear that plaintiff has stated a colorable claim of injury to an interest which is arguably (under the criteria of S D) a property interest in this contract and therefore protected underArticle First, section 10 of our state constitution. S DMaintenance Co., Inc., supra; Unger v. National ResidentsMatching Program, supra.
Finally, defendant's argument that the mere inclusion in any state contract of a convenience termination clause such as the one in this contract automatically removes it from the realm of a protected property interest is without merit. The case upon which the defendant principally relies for this theory itself stressed that it was the choice of termination options by the city that was fatal to the contractor's claim of a property interest and dispositive of the case. S D Maintenance Co., Inc., supra.,
968. Similarly, in the case at bar, this is no ordinary commercial contract with the state. It is extraordinary by virtue of the choice of the default clause over the convenience clause as a vehicle of termination and by virtue of that choice its character of permanency and entitlement is established.
Accordingly, the court has subject matter jurisdiction of this matter and the defendant's motion to dismiss should be and is hereby DENIED.
BY THE COURT,
Melville, J.