**FOX FUEL, A DIVISION OF KEROSCENE, INC.**

v.

**DELAWARE COUNTY SCHOOLS JOINT PURCHASING BOARD, et al.**

Civ. A. No. 94–1067.

United States District Court, E.D. Pennsylvania.

June 8, 1994.

Benjamin E. Zuckerman, Christopher Gatti, Sherr, Joffe & Zuckereman, P.C., West Conshohocken, PA, for plaintiff.

Michael F.X. Coll, Media, PA, for Delaware County Schools Joint Purchasing Bd.

Michael I. Levin, Cleckner and Fearen, Willow Grove, PA, for Delaware County Intermediate Unit, Susan C. Owens, George W. Myers, James F. Shields, John Doe 2–14.

Andrew J. Reilly, Swartz, Campbell & Detweiler, Media, PA, for Michael Coll.

Michael I. Levin, Cleckner and Fearen, Willow Grove, PA, for Chichester School Dist., Roberta Hartzell, Garnet Valley School Dist., Thomas Delaney, School Dist. of Haverford Tp., William Glancey, Penn–Delco School Dist., Mark Tracy, Radnor Tp. School Dist., Joseph Ellis, Jr., Rose Tree Media School Dist., Sharon Round, Southeast Delco School Dist., Springfield School Dist., Harry Oldham, Upper Darby School Dist., Kenneth Hemphill, Chester–Upland School Dist., Marple–Newtown School Dist., Ronald Scott.

Fred B. Buck, Rawle & Henderson, Philadelphia, PA, for Wallingford–Swarthmore School Dist., Kenneth Lupold.

D. Barry Gibbons, Gibbons, Buckley, Smith, Palmer & Proud, P.C., Media, PA, for Delaware County Community College.

### MEMORANDUM

GILES, District Judge.

Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the motions will be granted in part and denied in part.

### I. STANDARD FOR A MOTION TO DISMISS

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the legal sufficiency of the complaint. Accordingly, all factual allegations made in the complaint are assumed to be true and all reasonable inferences that may be drawn from the complaint are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). The complaint should be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spald-*

*ing*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### II. THE COMPLAINT

The Amended Complaint alleges facts as follows:

Fox Fuel ("Fox") is a Pennsylvania corporation in the business of distributing petroleum products. A substantial portion of Fox's revenue comes from the supply of petroleum products to public entities and agencies pursuant to public competitive bidding procedures. In 1991, the Delaware County Schools Joint Purchasing Board ("DCSJPB")[1] awarded Fox the exclusive right to supply diesel fuel and gasoline to various entities, including several Delaware County school districts, who were members of the DCSJPB and/or who participated in the joint purchasing of fuel and gasoline. Fox performed its supply duties in an exemplary manner. Although the fuel and gasoline supply bid documents requested that successful bidders provide acceptable performance security, DCSJPB never requested that Fox provide it with such security at any time during the 1991–92 supply period.

In 1992, DCSJPB again awarded Fox the exclusive right for one year to supply diesel fuel and gasoline. Again, Fox performed in an exemplary manner. As before, the bid documents requested that the successful bidder provide acceptable performance security, but at no time during the 1992–93 period did DCSJPB request Fox provide such security.

On March 4, 1993, DCSJPB again awarded Fox the exclusive right for one year to supply diesel fuel and gasoline for the 1993–94 supply period. Fox continued to perform in an exemplary manner. On August 25, 1993, Fox received a letter from Susan C. Owens ("Owens")[2] on behalf of the Delaware County Intermediate Unit ("DCIU") and the other defendants, indicating that no performance bond had been received from Fox for the 1993–94 supply period. Thereafter, a series of communications occurred between representatives of Fox and the defendants regard-

---

1. DCSJPB is a subunit of the Delaware County Intermediate Unit, which has been designated as a "local agency" by Pennsylvania statute. Amended Complaint ¶ 2.

2. Owens is Chairperson of the DCSJPB. Amended Complaint ¶ 3.

ing what would constitute acceptable performance security.

On November 9, 1993, in an attempt to tender acceptable performance security, Fox sent a specimen letter of credit to the DCIU. On November 15, Owens sent a letter to Fox stating that the specimen letter of credit would be acceptable provided that two minor changes were made to it. Fox made the requested changes and on November 30, in accordance with the representations made by defendants, it placed over $300,000 in a pledged collateral account naming the DCSJPB as the sole payee in the event of default. A copy of this account agreement was faxed to Owens on the same date.

Despite the fact that Fox was ready, willing and able to provide a collateral account agreement demonstrating acceptable performance security, and although Fox was performing in an exemplary manner, the DCSJPB, through the individual defendants and on behalf of the DCIU and the school district defendants, informed Fox, in a letter dated December 3, 1993, that it was terminating Fox's exclusive right to supply fuel. The reason given for this termination was Fox's alleged failure to provide acceptable performance security.

## III. DISCUSSION

The Amended Complaint names 28 defendants: DCSJPB; DCSJPB's Chairperson and Solicitor; DCIU; DCIU's Executive Director; twelve school districts; the Business Administrators of ten of those twelve districts; and Delaware County Community College. Count I of the Amended Complaint attempts to state a claim under 42 U.S.C. § 1983, alleging that the defendants' actions deprived Fox of property and liberty without due process of law. Count II attempts to state a claim for breach of contract. Count III alleges that defendants made fraudulent misrepresentations to Fox about what would constitute "acceptable performance security." Defendants have moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

### A. Count I (Due Process)

Fox asserts that the defendants' actions deprived it of liberty and property without due process of law.

The fourteenth amendment prohibits state deprivations of life, liberty, or property without due process of law. Application of this prohibition requires a familiar two stage analysis: we first must ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law."

*Unger v. National Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir.1991) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984)).

As explained below, the Amended Complaint fails to allege facts sufficient for a finding that defendants' actions infringed upon a protected property interest. However, the facts alleged do support a claim that Fox's liberty interest was infringed without due process of law. Therefore, defendants' motions to dismiss Count I will be denied.

#### 1. Property

"[P]roperty interests are not generally created by the Constitution. Instead, . . . property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Unger*, 928 F.2d at 1396 (internal quotation marks omitted) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Robb*, 733 F.2d at 292). Although a property interest is created and defined by state law, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Berlanti v. Bodman*, 780 F.2d 296, 299 (3d Cir. 1985) (quoting *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978)).

Fox alleges that its exclusive right to supply diesel fuel and gasoline constituted a

property interest that could not be infringed without due process.

> [I]t is beyond dispute that a contract with a state entity *can* give rise to a property right protected under the Fourteenth Amendment. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972) (holding that contract of employment providing that professor could be terminated only for cause constituted property right protected by Fourteenth Amendment). Nevertheless, the Supreme Court has never held that every state contract gives rise to a property interest protected under the Fourteenth Amendment. *See id.* at 599, 92 S.Ct. at 2698–99 (noting that the non-tenured teacher's contract in *Roth* did not create a protectable property interest).

*Unger,* 928 F.2d at 1397 (emphasis added). "Thus, the question becomes where to draw the line" between those contractual rights that do create protected property interests and those that do not. *Id.* at 1398; *see also, id.* (quoting *Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412, 416 (7th Cir.1988) ("it is necessary to distinguish between 'mere' contract rights and property rights created by contracts"); *id.* at 1398–99 (citing federal courts of appeals in accord)).

Only "two general types of contract rights . . . have been found to be property protected under the Fourteenth Amendment." *Unger,* 928 F.2d at 1399.

> [T]he first type arises where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits. The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Unger,* 928 F.2d at 1399 (citing, *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985); *Arnett v. Kennedy,* 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974); *S & D Maintenance Co.*

*v. Goldin,* 844 F.2d 962, 966–67 (2d Cir.1988)) (internal quotation marks omitted).

■ Fox has failed to allege any facts that would place the contract at issue within either of the two above-described types. An ordinary commercial contract is not "characterized by a quality of either extreme dependence . . . or permanence," *Unger,* 928 F.2d at 1399. The Amended Complaint does not allege that the contract could be terminated only for cause, and Fox has not pointed to any state statute or regulation that would require that the contract at issue be terminated only for cause, *compare Berlanti,* 780 F.2d at 299–300 (under New Jersey law, corporate officer has a property interest in not being arbitrarily debarred from bidding for state contracts; as a matter of New Jersey law, debarment may be only for cause). We conclude that the contract did not confer upon Fox any constitutionally protected property right.

### 2. Liberty

■ Fox also argues that it was deprived of a liberty interest protected by the Fourteenth Amendment. The court finds that the Amended Complaint adequately pleads such a deprivation.

Liberty "denotes not merely freedom from bodily restraint." *Unger,* 928 F.2d at 1395–96 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923)). The United States Supreme Court explored the meaning of the Fourteenth Amendment "liberty" in *Roth, supra. See Unger,* 928 F.2d at 1396 (discussing *Roth* ). In *Roth,* an assistant professor whom a state university had hired without tenure under a one year contract was informed that he would not be rehired for the following academic year. *Roth,* 408 U.S. at 566, 92 S.Ct. at 2703. The teacher brought suit, alleging that his employer had infringed upon liberty interests protected under the Fourteenth Amendment. *Id.* at 568–69, 92 S.Ct. at 2704–05.

The district court in *Roth* granted summary judgment in favor of the teacher. The Supreme Court reversed, concluding that "[i]t stretches the concept too far to suggest

that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 575, 92 S.Ct. at 2708. The Court qualified its conclusion, however, by noting that the state university "did not make any charge against [the teacher] that might seriously damage his standing and associations in his community." 408 U.S. at 573, 92 S.Ct. at 2707. The Court continued:

> Similarly, there is no suggestion that the State [University], in declining to re-employ the respondent, imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State [University], for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case.

408 U.S. at 573–74, 92 S.Ct. at 2707.

Subsequently, the third circuit had occasion to apply *Roth* in *Unger.* In February, 1989, Temple University Hospital had decided to discontinue its three-year graduate residency program in dermatology, effective June 30, 1990. Unger, a physician, was scheduled to enter the Hospital's dermatology residency program in July, 1989. In February 1989, the Hospital informed Unger that she would be unable to begin her dermatology residency because of the program's impending demise. Unger brought suit, alleging that her liberty interests had been violated when the dermatology program was discontinued before she could enter the program. 928 F.2d at 1393.

The third circuit, following *Roth,* held that Unger had failed to allege an actionable deprivation of liberty, because "her complaint fail[ed] to allege that Temple's actions seriously damaged her standing or associations in her community[,] ... [and did] not allege that Temple's actions imposed upon her a stigma or other disability that generally foreclosed her freedom to take advantage of other educational opportunities." *Unger,* 928 F.2d at 1396. *See also, J.P. Mascaro & Sons, Inc. v. Bristol,* 497 F.Supp. 625, 628 (E.D.Pa.1980) (no due process violation where plaintiff trash collector was denied

contract with Township, absent allegations that Township's actions would preclude plaintiff from bidding for trash removal contracts in the future).

The Amended Complaint in the instant case alleges the factual elements whose absence the *Roth* and *Unger* courts found to be fatal. The Amended Complaint alleges that:

> As a result of defendants' deliberate and wrongful termination of Fox Fuels' exclusive right to supply the fuel needs of the Delaware County schools that were members of the DCSJPB, plaintiff was deprived of ... its previously recognized status as a "responsible bidder," and its ability to obtain future public contracts. All bidders for public contracts must disclose whether the bidder has ever been discharged by a public entity or agency. Prior to the termination of this contract, plaintiff was and had been recognized as a "responsible bidder" for the purposes of obtaining public contracts. By deliberately terminating Fox Fuels' exclusive right to provide diesel fuel and gasoline to member schools, the defendants destroyed this beneficial classification and replaced it with a stigma that will eliminate plaintiffs' ability to obtain future public contracts.

Amended Complaint ¶ 51.

In effect, Fox alleges that the termination of the fuel supply agreement served to place it on a "blacklist" of entities unable to engage in public contracting. Thus, Fox alleges facts supporting a claim that defendants' actions imposed upon it a "stigma or other disability that generally foreclosed [its] freedom to take advantage of other [contractual] opportunities," *Unger,* 928 F.2d at 1396, and, therefore, adequately alleges that Fox was deprived of a Fourteenth Amendment liberty interest. *See Perri v. Aytch,* 724 F.2d 362, 367 (3d Cir.1983) (citing *Roth* ) (public employee's liberty interest is infringed when she is terminated with charges that might seriously damage her standing and associations in the community or when the discharge imposes on her a stigma or other disability that forecloses freedom to take advantage of other employment opportunities); *Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953, 962–66 (D.C.Cir.1980)

(government violated supplier's due process liberty right when it rejected supplier's bids to supply dairy products based on agency contracting officers' determinations that supplier lacked integrity and responsibility without giving supplier any notice that its integrity was in issue).

### 3. What process was due?

■ Having determined that the Amended Complaint adequately alleges the infringement of a constitutionally protected liberty interest, we must decide if that infringement occurred without due process of law. As the Supreme Court has stated, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).[3]

■ Depending upon the circumstances, due process may be provided by pre-deprivation process or by post-deprivation remedies, or by some combination thereof. *See, e.g., Loudermill; Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Reich v. Beharry,* 883 F.2d 239, 241–43 (3d Cir. 1989).

> The appropriate level of procedural safeguards to satisfy due process depends upon a balancing of the factors enumerated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): 1) the private interest at stake, 2) the government's countervailing interest, and 3) the risk of an erroneous deprivation of the private interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*McKeesport Hospital v. The Accreditation Council for Graduate Medical Education,* 24 F.3d 519, 531 (3d Cir.1994) (Becker, J., concurring in the judgment).

■ Given the instant case's current procedural posture, it is impossible to perform completely the *Mathews v. Eldridge* balancing. The bare pleadings shed limited light on the *Mathews* factors, and the parties have not discussed those factors in their briefs. We find, however, that some notice and opportunity to respond is due before a public contractor such as Fox is stripped of its "responsible bidder" status. *See Berlanti v. Bodman,* 780 F.2d 296 (3d Cir.1985). Because the complaint alleges that Fox was suddenly and without warning stripped of this status, we conclude that the motions to dismiss Fox's due process claim must be denied.

In *Berlanti,* the firm of which Berlanti was president was hired in 1980 as a subcontractor on a public works contract in New Jersey. After one of the firm's employees complained to the New Jersey Department of Labor ("NJDOL") about the wages being paid by the firm, NJDOL audited the firm and found that it had not paid the prevailing wage rate as required by New Jersey law. The New Jersey Commissioner of Labor then filed a complaint against the firm in state court, seeking payment of the unpaid wages. In February 1983, the state court entered summary judgment for the Commissioner. This decision was affirmed on appeal by the New Jersey Superior Court, Appellate Division. During the same period, NJDOL conducted an audit of the firm's wage payments on other projects and found additional violations of state law. Subsequently, NJDOL informed Berlanti that it had initiated debarment proceedings against him and his firm. *Id.,* 780 F.2d at 297–98.

Berlanti and his firm requested a hearing on the proposed debarment and the matter was referred to a New Jersey administrative law judge. The firm did not deny that it had failed to pay the prevailing wages. The administrative law judge granted summary judgment for NJDOL, and concluded that both the firm and Berlanti should be debarred. Berlanti was then notified that his name and the name of his firm had been placed on the debarment list. Under New Jersey law, a debarred person or firm cannot

---

**3.** We emphasize that the constitutionally protected interest of which Fox was allegedly deprived was its liberty interest in "responsible bidder" status. Thus, any process due Fox was in regard to this status alone. Thus, for example, if the fuel distribution agreement was terminated without any effect on Fox's responsible bidder status, no due process claim could arise.

bid on public contracts for three years. *Id.*, 780 F.2d at 297–98.

Berlanti filed a 42 U.S.C. § 1983 civil rights action, alleging that New Jersey's debarment of him personally was done without notice and a hearing as to his individual responsibility, and so deprived him of property without due process of law. The district court, relying on *Parratt v. Taylor*, concluded that no due process violation occurred, because the state provided adequate post-debarment remedies. *Berlanti*, 780 F.2d at 301.

The third circuit reversed. The court of appeals found that Berlanti had a property interest in not being arbitrarily debarred, which entitled him to some procedural protection under the due process clause. *Id.*, 780 F.2d at 300.[4] The court also found that "the availability of post-deprivation remedies [wa]s irrelevant. ... [I]f the government entity could have, but did not, provide predeprivation procedures, a § 1983 action complaining of the lack of procedural due process may be maintained in federal court, notwithstanding the availability of state judicial routes as well." *Id.*, 780 F.2d at 301 (quoting *Stana v. School District of City of Pittsburgh*, 775 F.2d 122 (3d Cir.1985)).

This case is substantially similar to *Berlanti*. While in *Berlanti* the constitutionally protected interest was characterized as "property," and is characterized as "liberty" here, the substance of the protected interest is analogous. In each case, the interest to be protected is the interest in status as an entity or person eligible for bidding on public contracts. We conclude that, on the facts alleged in the Amended Complaint, Fox was entitled to some sort of "predeprivation procedures" before it was stripped of its "responsible bidder" status. Since the Amend-

ed Complaint alleges that Fox was stripped of its status without any predeprivation notice or opportunity to respond, the motion to dismiss Count I must be denied.[5]

While we conclude that Count I of the Amended Complaint pleads facts sufficient to survive a motion to dismiss, we note that some of Fox's allegations are rather conclusory. The Amended Complaint alleges that "[a]ll bidders for public contracts must disclose whether the bidder has ever been discharged by a public entity or agency," and implies that the discharge of a contractor is sufficient to remove its "responsible bidder" status and prevent it from bidding on public contracts. Amended Complaint ¶ 51. However, it appears that the question of whether termination of the fuel delivery agreement under the circumstances alleged must be reported in future contract bids, and whether that termination actually deprived Fox of responsible bidder status, are matters of law.

■■■ The Allegations of the Amended Complaint also sweep very broadly, implicating all twenty-eight defendants without any discrimination as to the specific actions taken by each one. For an individual to be liable under 42 U.S.C. § 1983, he or she must have some personal involvement in the deprivation of the constitutionally protected right. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir.1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1913 n. 3, 68 L.Ed.2d 420 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976)). In addition, § 1983 claims against the DCIU, DCSJPB, and school board defendants can succeed only if those defendants acted pursuant to a institutional policy practice or custom. *See Monell v. Department of Social Services*, 436

---

4. Unlike the instant case, Berlanti pointed to New Jersey statutes that created a property interest. *See Berlanti*, 780 F.2d at 299–300.

5. While *Berlanti* requires that a "responsible bidder" be provided with some process before being deprived of that status, the pre-deprivation process need not be elaborate, and certainly need not extend to the provision of a full-blown evidentiary hearing. The *Berlanti* court did not decide the exact scope of predeprivation procedure due Berlanti. Instead, it remanded to the

district court to "consider whether Berlanti was in fact deprived of notice and a hearing, as alleged, ... and what process was due." *Berlanti*, 780 F.2d at 301 (footnotes omitted). However, the third circuit has confronted the *Mathews* balancing in a case similar to the instant one, and has concluded that a full-evidentiary hearing is not required prior to deprivation of a liberty interest of the type at stake in the instant case. *See Ritter v. Cohen*, 797 F.2d 119 (3d Cir.1986).

U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[6]

### B. Count II (Breach of Contract)

In Count II of the Amended Complaint, Fox claims that "[d]efendants breached their fuel purchase agreement with [Fox] by wrongfully and unreasonably canceling Fox Fuel's right to provide petroleum products to the Delaware County Schools that were members of the DCSJPB." Amended Complaint ¶ 57. A number of defendants have moved to dismiss plaintiff's breach of contract claim, arguing that there was no privity of contract between them and the plaintiff, and that they cannot be held liable for breach of a contract to which they were not parties.

"It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Electron Energy Corp. v. Short*, 408 Pa.Super. 563, 567, 597 A.2d 175, 177 (1991) (citing *Viso v. Werner*, 471 Pa. 42, 46, 369 A.2d 1185 (1977)), *aff'd without opinion*, 533 Pa. 66, 618 A.2d 395 (1993). Thus, Count II must be dismissed except with respect to those defendants with whom the Amended Complaint alleges Fox had a contract.

The Amended Complaint is less than a model of clarity on the question of who was party to the fuel distribution contract. Fox alleges that DCSJPB awarded it "the exclusive right for one year to supply diesel fuel and gasoline to various entities, specifically including several Delaware County school districts, who were members of the DCSJPB and/or who participated in the joint purchasing of said fuel and gasoline from Fox." Amended Complaint ¶ 41. The most natural interpretation of this pleading is that the contract in question was awarded by the DCSJPB. Under this reading of the Amended Complaint, there was no privity of contract between Fox and any other defendant, with the possible exception of DCIU, of which DCSJPB is allegedly a subunit.

Read more broadly, however, the Amended Complaint pleads that the school district defendants were parties to the fuel purchase agreement, by virtue of the claim that they "participated in the joint purchasing of said fuel and gasoline from Fox." Therefore, we will deny the motion to dismiss Count II as to the school district defendants, as well as with respect to DCIU and DCSJPB. Even with a charitable reading of the Amended Complaint, however, we cannot find that the individual defendants were parties to the contract. Therefore, Count II must be dismissed as to those defendants.[7]

### C. Count III (Fraudulent Misrepresentation)

Count III of the Amended Complaint attempts to state a claim for fraudulent misrepresentation, alleging that:

> Defendants made representations to plaintiff concerning what would constitute "acceptable performance security," knowing that plaintiff would rely on these representations. The individuals who made these representations included, but were not limited to, Michael Coll, the Solicitor for the DCSJPB and Susan C. Owens, the Chairperson of the DCSJPB.

Amended Complaint ¶ 60. The complaint further pleads that these alleged fraudulent misrepresentations were made at a meeting on November 3, 1993 and in a letter from Owens dated November 15, 1993. *Id.*

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments

---

6. A "single decision can constitute a 'policy' where 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Bello v. Walker*, 840 F.2d 1124, 1130 n. 4 (3d Cir.) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986)), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988), *and cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

7. Certain defendants also argue that Count II must be dismissed as being within the exclusive jurisdiction of the Commonwealth Board of Claims. Because the Amended Complaint will proceed on Count I, and because we believe that the issues may be substantially simplified through discovery or summary disposition, we will not address defendants' jurisdictional argument at this time.

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." One of the fundamental purposes of this requirement is to give the defendants fair notice of the claim against them. "[F]raud and mistake embrace such a wide variety of potential conduct that a defendant needs a substantial amount of particularized information about a plaintiff's claim in order to enable him to understand it and effectively prepare his response." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1296, at 580 (1990).

■ As to defendants Coll and Owens, the court finds that the allegations of Count III are sufficiently specific to withstand a motion to dismiss, since they put Coll and Owens on notice that statements they made at specific times about a specific topic are alleged by Fox to be fraudulent misrepresentations. As to all other defendants, however, the allegations of Count III are not specific enough to comply with Fed.R.Civ.P. 9(b). A defendant who is not named can hardly be said to have been put on fair notice of the claim against him or her. Fox's blanket allegation that "defendants made representations" without any further specificity is fatal to its claim.

■ Coll and Owens argue that Count III must be dismissed as to them because they are shielded from liability by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541 *et seq.*, which grants broad immunity from tort suits to local agencies and their employees.[8] The general rule of the PSTCA is that local agencies and their employees are immune from suit. 42 Pa.C.S. §§ 8541 & 8545. The only exceptions to this general grant of immunity are those which are specified in the Act. *Id.* These exceptions to the general rule of immunity are given in 42 Pa.C.S. §§ 8542 & 8550. Thus, Coll and Owens are immune from the fraudulent misrepresentation claim unless that claim falls into one of the categories enumerated in § 8542 or § 8550.

Section 8542 of PSTCA permits recovery against a local agency or its employee for negligent acts if the act falls into one of the following eight categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals. 42 Pa. C.S. § 8542(b). Because no alleged act of Coll or Owens falls into one of these eight categories, any negligence claim against Coll or Owens would be barred by PSTCA. *See, e.g., Agresta v. Philadelphia,* 694 F.Supp. 117, 123 (E.D.Pa.1988); *Buskirk v. Seiple* 560 F.Supp. 247, 251–52 (E.D.Pa.1983).

While PSTCA grants immunity from negligent acts except in the eight categories delineated above, the same broad immunity is not granted for intentional torts. Section 8550 of the Act provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550. This section strips local agency employees of immunity for acts which constitute crimes, actual fraud, actual malice, or willful misconduct. *Agresta,* 694 F.Supp. at 123–24; *LaPlant v. Frazier,* 564 F.Supp. 1095, 1098–99 (E.D.Pa.1983). "Willful misconduct, for the purposes of tort law, has been defined by [the Pennsylvania] Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.... In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *King v. Breach,* 115 Pa.Cmwlth. 355, 540 A.2d 976, 981 (1988) (citing *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d

---

8. The governmental immunity granted by PSTCA applies only to state tort claims. It has no effect upon plaintiff's federal civil rights claims. *Wade v. Pittsburgh,* 765 F.2d 405 (3rd Cir.1985).

440 (1965); W. Prosser, *Handbook of The Law of Torts* 31 (4th ed. 1971)); *accord, Weinstein v. Bullick,* 827 F.Supp. 1193, 1206 (E.D.Pa.1993); *Agresta; LaPlant.*

Fox has alleged that Coll and Owens knowingly and willfully made fraudulent misrepresentations. If these allegations were borne out at trial, Coll and Owens would be stripped of their PSTCA immunity by § 8550.[9] Therefore, their motions to dismiss Count III will be denied.

---

9. Because Count III has been dismissed for other reasons as to all other defendants, we need not decide how § 8550 would affect the liability of the local agency defendants, DCSJPB, DCIU, and the school districts. We note, however, that the courts have uniformly held that § 8550 distinguishes sharply between local agencies and the employees of those agencies, with the local agency retaining its immunity even in the presence of willful misconduct by its employees. *Marko v. Philadelphia,* 133 Pa.Cmwlth. 574, 576 A.2d 1193, 1193 (1990), *app. granted,* 527 Pa. 626, 592 A.2d 46 (1991); *King v. Breach,* 540 A.2d at 979; *Deluca v. Whitemarsh Township,* 106 Pa.Cmwlth. 325, 526 A.2d 456, 457 (1987); *Miller v. Emelson,* 103 Pa.Cmwlth. 437, 520 A.2d 913, 915, *appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987), *and appeal denied,* 517 Pa. 590, 534 A.2d 770 (1987); *Steiner v. Pittsburgh,* 97 Pa.Commw. 440, 509 A.2d 1368, 1369–70 (1986); *Agresta,* 694 F.Supp. at 123–24; *Dudosh v. Allentown,* 629 F.Supp. 849, 856 (E.D.Pa.1985); *Kuchka v. Kile,* 634 F.Supp. 502, 513 (M.D.Pa.1985); *Paul v. John Wanamakers, Inc.,* 593 F.Supp. 219, 222–23 (E.D.Pa.1984); *Buskirk,* 560 F.Supp. at 251–52; *Lopuszanski v. Fabey,* 560 F.Supp. 3, 6 (E.D.Pa. 1982); *Brancato v. Philadelphia,* Slip Opinion at p. 3–4, Civil Action No. 92–2947, 1992 WL 358065 (E.D.Pa. November 24, 1992); Lajeunesse, *The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability,* 84 Dick.L.Rev. 717 (1980). Thus, while Coll and Owens, as employees of a local agency, are denied immunity for their intentional torts, immunity is not stripped from the local agency itself. Thus, all of the local agency defendants would be immune from suit on Count III even in the absence of our dismissal on other grounds.