**Darrell BENNETT, Plaintiff, Appellant,**

v.

**CITY OF BOSTON, et al.,
Defendants, Appellees.**

**No. 88–1763.**

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1988.
Decided March 9, 1989.

Philip R. Olenick with whom Paul L. Nevins and Nevins and Olenick, Boston, Mass., were on brief, for plaintiff, appellant.

Michael C. Bolden, Asst. Corp. Counsel, East Cambridge, Mass., City of Boston Law Dept., for defendants, appellees.

17. 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956    (1942).

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

The appellant, Darrell Bennett, claims that the City of Boston, in dismissing him without a hearing from his job with the Boston Penal Department, deprived him of "property without due process of law," thereby violating the Fourteenth Amendment to the Federal Constitution. The district court, after reviewing the City's motion for summary judgment and Bennett's response, found that Bennett, a "provisional employee," could not prove he had a "property interest" in his job, and therefore that the Fourteenth Amendment did not protect him. The district court granted the City's motion for summary judgment and dismissed Bennett's 42 U.S.C. § 1983 claim. Bennett appeals. We conclude that the district court was correct.

The relevant facts are as follows: On April 14, 1983, the City hired Bennett as a "provisional" corrections officer, for a term of three months. In July 1983, at the end of Bennett's three month term, the City extended his "provisional" employment for an additional three months, until October 15, 1983. The City provided another three month extension in October (until January 15, 1984); and still another three month extension in January (until April 15, 1984).

On March 20, 1984, the Boston Police arrested Bennett and charged him with having received stolen property. On March 23 the City suspended him from his job, but with pay. On April 11 the Dorchester District Court, acting without a jury pursuant to Mass.Gen.L.Ann. ch. 218, §§ 26 and 26A (West Supp.1988), found Bennett guilty. Bennett then asked for a trial by jury *de novo* in the Municipal Court, as was his right under Mass.Gen.L. Ann. ch. 218, § 27A (West Supp.1988), and ch. 278, § 18 (West 1981). *See Ludwig v. Massachusetts*, 427 U.S. 618, 620–22, 96 S.Ct. 2781, 2783–84, 49 L.Ed.2d 732 (1976). Eventually that court dismissed the charges against Bennett for want of prosecution.

On April 24, while the proceedings in Municipal Court were still pending, the City dismissed Bennett from his job. The "Reason for Involuntary Separation" checked off on the discharge document in the record is "Discharged for cause;" the item "Expiration of temporary or provisional employment" was left blank. Bennett did not learn of his discharge until August of 1984, after the Municipal Court had dismissed the charges against him and he had requested resumption of his employment. The City never gave Bennett a hearing, at which he presumably would have claimed his innocence of the criminal charges. The City did, however, tell Bennett in August that he could "reapply for employment as a provisional correction officer;" it told him that, if a position became available, "you should be prepared to explain your actions which led to criminal charges to be filed against you."

Bennett rests his claim that he has a constitutionally protected property interest in his job primarily upon the terms of a collective bargaining agreement negotiated between his union, the American Federation of State, County, and Municipal Employees (AFSCME), and Suffolk County. That agreement says, in relevant part:

ARTICLE VI: Discipline and Discharge. *Section 1.* No employee who has completed six (6) months of service shall be disciplined, suspended, or discharged except for just cause....

*Section 2.* It is understood and agreed that the Municipal Employer's failure or refusal to request authorization from Civil Service to extend a provisional appointment beyond its original term or beyond any previously authorized extension thereof, shall not constitute discharge or other discipline hereunder and shall not be a subject of grievance or arbitration.

Bennett says that Section 1 of this article makes clear that the City cannot discharge him "except for just cause." He argues that the courts have held that an employee whose job the state law protects with a "for cause" provision is an employee to whom the state has given a form of "prop-

erty," in terms of the Fourteenth Amendment.

It is true that numerous courts have pointed to "for cause" restrictions on termination as strong evidence that an individual possesses a constitutionally protected property interest in his job. *See, e.g., Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–1562, 56 L.Ed.2d 30 (1978); *Bishop v. Wood,* 426 U.S. 341, 345 & n. 8, 96 S.Ct. 2074, 2078 & n. 8, 48 L.Ed.2d 684 (1976); *Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 152, 166, 181–85, 94 S.Ct. 1633, 1643, 1650, 1657–1660 (1974); *Perry v. Sinderman,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Kercado–Melendez v. Aponte–Roque,* 829 F.2d 255, 262 (1st Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988); *Small v. Inhabitants of the City of Belfast,* 796 F.2d 544, 549–50 (1st Cir.1986); *Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981).

Bennett, however, overlooks a critical consideration. The *reason* that courts, in such impressive numbers, have indicated that a "cause for dismissal" requirement creates a "property" interest in a job is that such a requirement typically offers an employee important job security. The Supreme Court explained the basis for considering jobs in government "property" in *Roth* when it said "[i]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." 408 U.S. at 577, 92 S.Ct. at 2709. *Accord Beitzell,* 643 F.2d at 874. In the presence of a "for cause" requirement, the employee typically has a legal basis for thinking he will, in all likelihood, be able to keep the job; in the absence of such a requirement, the state law typically does not provide him with good grounds for such an expectation. To rephrase the same point, in the presence of such a requirement, the employee's job becomes more like his house or his land; it is, speaking legally about state law, difficult

for the state to take it from him. "[T]he more circumscribed is the government's discretion (under substantive state or federal law) to withhold a benefit, the more likely that benefit constitutes 'property.'" *Beitzell,* 643 F.2d at 874 (citation omitted). In the absence of a "for cause" requirement, the employee's job is far less secure; it is, again speaking legally about state law, something the employee cannot readily count upon.

■ To understand the reason *why* a "for cause" requirement typically makes so important a constitutional difference is to understand that the use of the words "for cause" does not magically, or always, transform a job into protected property; the focus must remain upon the nature of the employee's legitimate expectation of continued entitlement to his or her job. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. That is why the *Goss* Court required an employee to have a *"legitimate claim of entitlement to continued employment* absent sufficient cause for discharge," 419 U.S. at 573, 95 S.Ct. at 735 (emphasis added); the Court did not just stop once it found the words "sufficient cause" in the contract. Following this principle in an analysis of a case of "successive, finite, temporary" appointments similar to Bennett's, we have found that "such appointments, by their very nature and terms, could not give rise to a legitimate expectation of continued employment once those appointments expired." *Castro v. United States,* 775 F.2d 399, 401, 406 (1st Cir.1985) (per curiam).

■ This explanation of the "for cause" requirement is critical here because of Section 2 of the collective bargaining agreement. That section says that the City's "failure or refusal to request authorization ... to extend a provisional appointment beyond ... any previously authorized extension ... shall not constitute discharge or other discipline hereunder." That clause means that the agreement could not have given Bennett good legal grounds for believing that the City would continue to employ him after his provisional term expired on April 15, 1984. It means that, despite

the "cause" language in Section 1, the City could have refused to retain him—*i.e.*, it could have failed to reappoint him—after April 15 *without cause*. That fact in turn means, irrespective of the City's actual reasons for dismissing him, Section 1 could not have given Bennett a legitimate expectation that he would likely continue in his job after the expiration of his term. And, that fact (particularly given the brief nature of the term and the fact that he was called a "provisional" employee) means that Section 1 did not transform his provisional employment into permanent employment or into a legitimate entitlement to continued employment; it did not give him a "property" interest in that job for constitutional purposes.

■ We add several further points. First, after reviewing the record, we conclude that no reasonable trier of fact could find that the City gave Bennett a three month extension beyond April 15, 1984. Although it paid him until April 24, and although it called his termination a "discharge" and left blank the box indicating "expiration of provisional employment," the record contains no request for authorization to extend his provisional term, and the record indicates that such a request must be made and granted for an extension to have official sanction.

Second, in this opinion, we have simply assumed for the sake of argument that, in principle, a "for cause" requirement in a collective bargaining contract with a public employer offers, for federal constitutional purposes, legal security similar to that provided by state statutory law. *See Cheveras–Pacheco v. Rivera–Gonzalez*, 809 F.2d 125, 126–27 (1st Cir.1987) (government employment contract can create property rights in job). *Cf. Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981) (mere breach of public employment contract, without property interest in the job itself, does not create a constitutional wrong); *Medina–Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981) (same).

Third, we need not decide whether Bennett's pre-April 15 suspension (from March 23 until April 24) violated the Due Process

Clause, for the City paid Bennett during this period. There is no significant evidence that the suspension hurt Bennett, because it was with pay. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 544–45, 105 S.Ct. 1487, 1494–95, 84 L.Ed.2d 494 (1985) (suspension with pay might not raise due process concerns); *id.* at 548–51, 105 S.Ct. at 1496–98 (Marshall, J., concurring) (focusing on loss of earnings). Nor has any claim of damage to reputation been brought to our attention. *See Dea v. Look*, 810 F.2d 12, 17 (1st Cir.1987); *Limerick v. Greenwald*, 666 F.2d 733, 734–35 (1st Cir.1981); *Beitzell*, 643 F.2d at 879. And Bennett could not obtain meaningful injunctive relief even were the suspension unlawful. *See Ragsdale v. Turnock*, 841 F.2d 1358, 1365–66 (7th Cir.1988) ("Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated"); *Chiriboga v. Saldana*, 660 F.Supp. 618, 624 (D.P.R.1987).

■ Finally, we note that Bennett proposes an alternative state statutory source for his claim of "property." He points to a Massachusetts Civil Service Law that gives a "provisional" employee a right to an informal hearing if he is to be discharged "as a result of allegations relative to his personal character or work performance and if the reason for such discharge is to become part of his employment record." Mass. Gen.L.Ann. ch. 31, § 41, ¶ 3 (West 1979). This statute, however, offers the employee no more than a procedural opportunity to convince a decision maker not to dismiss him and, perhaps, to clear his name; it provides no substantive standards governing discharge; and it therefore does not change state law governing whom the state can, or cannot, dismiss only "for cause." *See Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492 (" 'Property' cannot be defined by the procedures provided for its deprivation"); *Navas v. Gonzalez–Vales*, 752 F.2d 765, 768 (1st Cir.1985) ("the mere fact that the [government] has promulgated procedural rules by which to make retention decisions does not by itself create a constitutionally cognizable property interest in

continued employment"). Of course, we do not decide whether or not this statute, the collective bargaining agreement, or any other state statute provides Bennett with claims under state law, for this appeal raises only the federal constitutional question.

For these reasons, the judgment of the district court is

AFFIRMED.