28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald B. LEHMAN, Plaintiff-Appellant,
v.
Ray STURZA, individually and as an employee of Dare County,
North Carolina; Terry Wheeler, individually and as employee
of Dare County, North Carolina; Dare County, North
Carolina, Defendants-Appellees.
 No. 93-2133.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1994.
Decided July 12, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Terrence W. Boyle, District Judge. (CA-92-108-4BO)
 David Peter Voerman, Voerman & Carroll, P.A., New Bern, N.C., for appellant.
 William Alfred Blancato, Hendrick, Zotian, Bennett & Blancato, Winston-Salem, N.C., for appellees.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and MICHAEL, Circuit Judges, and GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald B. Lehman was an employee of Dare County from 1984 through 1991, when he was laid off in a reduction in force. He filed this 42 U.S.C. Sec. 1983 action against the county and two of its officials alleging he was laid off in violation of his rights under the Fourteenth and First Amendments to the United States Constitution. The district court granted defendants' motion for summary judgment. Lehman appeals, and for the reasons that follow, we affirm.
 
 
 2
 * Lehman, a registered Republican, began working for Dare County (County) at the Dare County Airport in 1984. In January 1989, the airport manager recommended that Lehman be discharged after Lehman refused to sign inaccurate time sheets. Lehman successfully contested that discharge recommendation. In February 1989, after Lehman requested a transfer to another department, the County Manager at the time (Cahoon) arranged for him to be transferred to a building inspector position in the Planning Department. Democratic members of the County Board of Commissioners (Board) claimed that Republican Commissioners used their political influence to effectuate that transfer. (At the time, there were three Republicans and two Democrats on the five member Board.)
 
 
 3
 Subsequently, Lehman also was successful in challenging the methodology used to calculate his overtime pay at the airport. In April 1989, Lehman was reimbursed by the County for the overtime pay owed him plus interest.
 
 
 4
 Over two years later, on May 3, 1991, the County Manager, Terry Wheeler, submitted to the Board a preliminary annual budget proposal for the 1991-92 fiscal year.[1] The Board returned the proposal to Wheeler and asked him to make additional budget cuts. Because there had been a decline in construction and consequently a decline in the amount of building permits issued over the prior several years, Wheeler recommended (1)eliminating one of the full-time building inspector positions, and (2)discharging one of the County's sanitarians. At a June 3, 1991 meeting, the Board adopted Wheeler's proposed budget, which included other budget cuts along with the reduction in force.
 
 
 5
 Wheeler then asked Ray Sturza, the Director of the Planning Department, to determine which building inspector should be laid off. Sturza considered only the four building inspectors who were primarily responsible for issuing permits, the area where work had declined. To make the selection, Sturza referred to the County's Personnel Ordinance (Ordinance), which has a separate provision for reduction in force (Section B-12). Section B-12 says: "In determining those employees to be retained from a reduction in force analysis, primary emphasis will be placed on the organizational needs of the County, department or unit, the type of appointment, length of service, and relative job performance." JA 91. For each of the four inspectors subject to layoff, Sturza assigned numerical values for the above four factors. Lehman had the lowest total score and therefore Sturza recommended that he be laid off. Lehman was the only registered Republican among the building inspectors.
 
 
 6
 After Lehman learned he was to be laid off, he sought to appeal the decision. Section B-12 allows employees terminated from a reduction in force to appeal to the County Manager. Accordingly, Lehman appealed to Wheeler, who affirmed Sturza's recommendation. Lehman also tried to use a more extensive grievance procedure set out in another section of the Ordinance, Section H-3. Section H-3 applies in the event of demotion, suspension, dismissal, reduction in pay, layoff or discrimination. Wheeler informed Lehman he could not use the Section H-3 grievance procedure because Section B-12 expressly governed reduction in force cases.
 
 
 7
 The final budget was presented to and approved by the Board on June 17, 1991. The vote was split along party lines, with three Democrats voting for it and the two Republicans voting against it. (Democrats had captured a majority of the seats on the Board in the November 1990 election.) The building inspector position eliminated by that vote has not been reestablished.
 
 
 8
 Lehman filed suit under 42 U.S.C. Sec. 1983 against the County and Wheeler and Sturza in their individual and official capacities. First, he claimed that he was deprived of his Fourteenth Amendment procedural due process rights. Second, he alleged he was laid off in violation of his First Amendment rights in that he was discharged (1)in retaliation for his earlier success both in contesting the airport manager's 1989 discharge recommendation and in claiming more overtime pay, and (2)for his political affiliation. Defendants moved for summary judgment, which the district court granted. Lehman appeals.
 
 II
 
 9
 We review de novo the district court's decision to grant summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994), petition for cert. filed, 62 U.S.L.W. 3827 (U.S. May 26, 1994) (No. 93-1893). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), cert. denied, 498 U.S. 1109 (1991)." In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir.1990). However, the nonmoving party must demonstrate that a triable issue of fact exists; he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). A mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 III
 
 10
 The district court held that Lehman could not invoke the procedural due process protections of the Fourteenth Amendment because he had no property interest in his continued employment with the County. We agree.
 
 
 11
 "In order to be entitled to the procedural safeguards encompassed by the due process clause of the fourteenth amendment (notice and an opportunity to be heard) the complaining party must suffer from a deprivation of a liberty or property interest." Beckham v. Harris, 756 F.2d 1032, 1036 (4th Cir.), cert. denied, 474 U.S. 903 (1985). To have a property interest, a person "must ... have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1971). "[T]he sufficiency of the claim of entitlement must be decided by reference to state law," Bishop v. Wood, 426 U.S. 341, 344 (1976); for example, state statutes, local ordinances or mutually explicit understandings. Id. at 345; Perry v. Sindermann, 408 U.S. 593, 601 (1972).
 
 
 12
 Under North Carolina law, public employees are presumptively employees at will. Harris v. Duke Power Co., 356 S.E.2d 357, 359-60 (N.C.1987). As such, they have no legitimate claim of entitlement to continued employment and thus no property interest for purposes of the Fourteenth Amendment. The presumption may be overcome, however, if the employee can point to a contract or ordinance establishing either that the employment relationship is for a definite duration or that the employee may not be discharged except "for cause." Id.
 
 
 13
 Lehman thus is presumptively an at will employee. However, he argues that the Ordinance, which has the force of state law for our purposes, see Pittman v. Wilson County, 839 F.2d 225, 227 (4th Cir.1988), establishes a legitimate claim of entitlement to continued employment. But there is nothing in the Ordinance--in particular, nothing in the Ordinance's scheme for classifying employees--to indicate that employees can only be discharged for cause. Neither does the earlier version of the Dare County Code referred to by Lehman suggest that he had a legitimate claim of entitlement to continued employment.
 
 
 14
 Lehman nevertheless argues that the Ordinance's grievance procedures and other procedural guarantees establish a legitimate claim of entitlement to continued employment. But "[i]t is by now well established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance." Cain v. Larson, 879 F.2d 1424, 1426 (7th Cir.), cert. denied, 493 U.S. 992 (1989); see also Jenkins v. Weatherholtz, 909 F.2d 105, 108 (4th Cir.1990); Bennett v. Boston, 869 F.2d 19, 22 (1st Cir.1989); Stow v. Cochran, 819 F.2d 864, 867 (8th Cir.1987); cf. Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (liberty interest); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir.1994) (liberty interest). As the Supreme Court explained in Olim, a case involving an alleged deprivation of a liberty interest:
 
 
 15
 Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.
 
 
 16
 Olim, 461 U.S. at 250-51. Accordingly, we must reject Lehman's argument.
 
 
 17
 In sum, Lehman had no legitimate claim of entitlement to continued employment with the County, and therefore the district court did not err in granting defendants' motion for summary judgment on Lehman's procedural due process claim.[2]
 
 IV
 
 18
 Lehman next claims that his discharge violated his First Amendment rights because, he says, he was discharged (1) in retaliation for his earlier success in contesting both the airport manager's discharge recommendation and his overtime pay computation, and (2)for his political affiliation. In support of these claims, Lehman sets out thirteen "facts" which, he says, are sufficient to create a jury question.
 
 
 19
 As for his complaints or "speech" relating to the airport manager's discharge recommendation and his overtime pay, "[t]o be protected, the speech must be on a matter of public concern." Waters v. Churchill, 62 U.S.L.W. 4397, 4399 (May 31, 1994); see Connick v. Myers, 461 U.S. 138, 142 (1983). "Whether an expression involves a matter of public concern is a question of law." Huang v. Board of Governors of the Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir.1990). Because "it is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern," id. (citing Connick, 461 U.S. at 148), this claim must fail.
 
 
 20
 As for Lehman's claim that he was laid off because he was a registered Republican, this claim essentially hinges on three facts: (1)the building inspectors who were not laid off were registered Democrats, (2)the Board vote to eliminate the building inspector position was split along party lines, and (3)over two years before his layoff Democratic Commissioners alleged that Republican Commissioners played a part in maneuvering his transfer to the building inspector position. But these facts, by themselves, are insufficient to show that defendants selected Lehman for layoff because he was a Republican. As an example of Lehman's lack of evidence, he does not offer anything beyond speculation to show that the Democratic Commissioners were aware that he was the one to be discharged when they voted to approve Wheeler's budget proposal. Because Lehman "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale, 769 F.2d at 214, the district court did not err in granting defendants' motion for summary judgment.
 
 V
 
 21
 We conclude that the district court did not err in granting defendants' motion for summary judgment and therefore the judgment is affirmed.
 
 AFFIRMED
 
 
 [1]
 Wheeler had been Assistant County Manager in 1989 when the airport manager recommended that Lehman be discharged and when Lehman challenged his overtime pay computation. Wheeler was directly involved with Lehman's overtime pay claim
 
 
 [2]
 Because we find no property interest here, we need not reach defendants' alternative arguments that the Ordinance was merely a guide for management and that a reduction in force layoff does not require due process protections. Nor do we entertain Lehman's arguments (1) that we should recognize a public policy exception to the employee at will doctrine in his case, (2) that an allegation of pretext allows him to circumvent the requirement that he have a property interest, and (3) that defendants should have let him use the Section H-3 grievance procedure in addition to the Section B-12 procedure