**WOMEN'S DEVELOPMENT CORP. and Women's Opportunity Realty Corp., Plaintiffs,**

v.

**CITY OF CENTRAL FALLS, By and Through its Treasurer, alias John SMITH, said Smith being fictitious, as the Office of Treasurer is presently vacant, Lee Matthews, the Mayor of Central Falls, John Does 1–5, as persons presently unknown, but acting in concert with the named Defendants, Defendants.**

**C.A. No. 96–171B.**

United States District Court, D. Rhode Island.

July 11, 1997.

Alden C. Harrington, Boyajian, Harrington & Richardson, Providence, RI, for Plaintiff.

J. WIlliam W. Harsch, Providence, RI, Marc DeSisto, DeSisto Law Offices, Providence, RI, Matthew Thomas Oliverio, Providence, RI, Sinclair T. Banks, Warren, RI, for Defendant.

## OPINION

FRANCIS J. BOYLE, Senior District Judge.

This case proves the unfortunate fact that high purpose does not always prevail when it comes to the details. Although the court has repeatedly implored the parties to reach their common objective, each side prefers to remain steadfastly determined to divert the route of travel. Central Falls residents in need of decent affordable housing are the victims of this litigation, and as far as the parties are concerned, neither side in this action can win in the long run.

In 1994 and 1995, the City of Central Falls, ("the City") and Women's Development Corporation, ("WDC") agreed to cooperate in developing housing for people with moderate incomes in the City. The agreements between them are now the subject of considerable dispute. In essence, the City agreed to sell certain parcels of city-owned land to WDC at less than "market value," and to grant federal funds awarded to the city to WDC, for use by WDC in providing housing to residents of the city of moderate means. The City and WDC reduced their agreements to writing and the agreements were signed by then Mayor Lazieh for the City and by Alma Felix Green, President of WDC. Part of the agreements was an understanding that WDC would perform the work to be done through an assignment of certain of its rights and responsibilities to Cogswell Homes, L.P. For purposes of this project and the current litigation, both WDC and Cogswell Homes will be referred to as WDC, unless specific reference to Cogswell Homes is required.

After each funding commitment from the City, WDC commissioned work on the project. The funding agreements between WDC and the City called for WDC to pay for services rendered, such as property acquisition costs, architectural services, and legal fees, and then request reimbursement from the City. The City was to apply for, and if obtained, use certain Community Block De-

velopment Grant funds from the federal government to reimburse WDC. The funding agreements, covering fiscal years 1995 and 1996, respectively, allowed the city to terminate the agreements "for cause," if WDC was found not to be in compliance with any of its commitments. Exh. 3, Plaintiffs' Memo in Opposition to Summary Judgment, 1994 Grant Contract for Projects and Activities in Association with the Department of Planning and Community Development Central Falls, Rhode Island, p. 11 of 27. The agreements also included a "termination for the convenience of the City" clause, which allowed the City to terminate the agreements simply by notifying WDC that the City wished to do so. *Id.*, at 11–12. The termination for convenience clause includes a liquidated damages provision in event of its invocation. *Id.* (If the City terminates under this provision "Grantee will be paid an amount which bears the same ratio to the total compensation as the services actually performed bear to the total services of the Grantee covered by this contract less payments of compensation previously made: *Provided*, however, that if less than sixty percent of the services covered by this Contract have been performed upon the effective date of such termination, the Grantee shall be reimbursed (in addition to the above payment) for that portion of the actual out-of-pocket expenses (not otherwise reimbursed under this Contract) incurred by the Grantee during the Contract period which are directly attributable to the uncompleted portion of the services covered by this Contract.").

After a re-alignment of City officials due to an election, the relationship between the parties deteriorated with multiple accusations and cross-accusations of non-compliance with contract terms lodged by the parties. The controversies reached the point where WDC filed suit against the City in state court in March, 1996, alleging breach of contract and violation of 42 U.S.C. § 1983, which prohibits deprivation of federally guaranteed rights under color of state law. The City removed the action to this court on the basis of this court's federal question jurisdiction over the § 1983 claim. 28 U.S.C.A. §§ 1331 (West 1993) and 1441(b) (West 1994). Shortly thereafter, in April, 1996, the City sent Cogs-well Homes a "Notice of Termination" informing it that the City was terminating the agreements between WDC and the City, and giving six reasons in support of this termination. This letter does not indicate that the City's termination was "for the convenience of the City."

■ This action is now the subject of a summary judgment motion by the City. Therefore It is crucial to specify what the legal issue to be decided at this time actually is. Jurisdiction is a threshold issue, and this court's jurisdiction over this action depends upon the existence of a federal law claim. Thus, the primary issue is not whether the City or WDC has breached the contracts but rather, whether the plaintiffs' argument that, under color of state law, they have been deprived of a federal constitutional right, can be sustained. In the context of this jurisdictional analysis, the legal issue is not whether there was a breach of contract; instead, it is whether plaintiffs allege the deprivation of an established federal constitutional right.

To establish a prima facie case of deprivation of federal constitutionally protected rights under color of state law, in violation of 42 U.S.C. § 1983, WDC must show that it had some federally protected interest in the agreements it had with the City that is not otherwise protected, and that WDC was unlawfully deprived of that interest by the City. The defendants assert that WDC has no basis for its § 1983 claim, as WDC has no constitutionally protected interest implicated in a straightforward, unadorned breach of contract action. WDC responds that it has a property interest in the performance of the agreement, primarily because of the "interdependence" of WDC's contracts with the City, the City's commitments to the state and federal governments under the Community Block Development Grant program, and WDC's efforts to obtain the funding required from other sources to complete the project. With respect to the § 1983 action, upon which the jurisdiction of this court depends, the City must prevail. This court holds that WDC has no federally protected constitutional interest created by this contract or the relationship of the parties and others under

federal or state law which avails WDC of the protection of § 1983 of the Civil Rights Act.

■ WDC claims a federal constitutionally protected property interest in the contract requiring the City to fund partially the moderate-income housing WDC committed to build and operate. Certainly, a contract with a public entity can create a constitutionally protected property interest. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (tenured teaching position). Federal courts have long recognized that, although the Constitution does not create property rights in contracts, its protections are available to vindicate those property interests created under state law. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..."). Most frequently, the issue is whether there is a violation of the "due process" clause of the Fifth Amendment, as "incorporated" into the Fourteenth. *E.g., Bennett v. City of Boston*, 869 F.2d 19, 20 (1st Cir.1989). Here, however, plaintiff's clearly have a state action for breach of contract, and hence are not denied due process to vindicate their interest in the contract. *S & D Maintenance v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988) ("As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure.").

Federal courts have been reluctant to extend federal protection of state-law rights against invasion by state actors, as WDC suggests this court should, to the breaking point at which every contract breach by a public entity gives rise to a civil rights claim by the aggrieved party. *See Unger v. National Residents Matching Program*, 928 F.2d 1392., 1399 (3d Cir.1991) (public hospital's breach of its agreement with a physician did not give rise to § 1983 claim by the physician for deprivation of federally protected right). Plaintiffs would convert any state-law breach of contract action against a municipality into an action to be tried in federal court. The mere statement of the proposition is sufficient for its refutation.

■ A distinction must be drawn between "run of the mine" contract rights, which are not cognizable by means of a § 1983 claim, and contract rights either coupled with a "status" or which by the terms of the contract itself cannot be violated without some due process before the rights are affected, which may provide the basis for a civil rights claim. *See Linan–Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d 915, 932 (3d Cir.1995). The reason for the distinction is manifest, as making it prevents the "wholesale federalization of state public contract law," which would be "far afield from the great purposes of the due process clause." *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989) (citations omitted). The distinction is therefore a natural one; where "the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits'" or "the contract itself includes a provision that the state entity can terminate the contract only for cause," then the contract confers special rights which are recognized as property protected by the Fourteenth Amendment. *Unger*, 928 F.2d at 1399, *citing S & D Maintenance*, 844 F.2d at 966–67. The upshot of the categories delineated in these cases is that contract benefits which have an aspect of permanence upon which the party contracting with the public entity may rely create federal constitutionally protected rights in the contract. *S & D Maintenance*, 844 F.2d at 966 ("procedural protection is sought in connection with a state's revocation of a *status* ...") (emphasis in original). Without this aspect, contract benefits lose the special quality which entitles the party contracting with a public entity to the protection of the United States Constitution, leaving the offended party to pursue its rights in a state-law breach of contract action. *Id.* at 968.

Plaintiffs assert that *Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982), stands for the proposition that a "termination for convenience clause" does not per se render a contract with a public entity devoid of protected property interest for the party contracting with the public entity, and thus supports their position. The plaintiffs are correct, as far as they go. *Torncello*, 681 F.2d at 772. Torncello does stand for the proposition that a termination for convenience clause can be properly *invoked* by the public entity only when the circumstances between the parties have changed, but here the question is not whether a purported termination for convenience of the City was proper, but rather, what effect the existence of the termination for convenience clause must have on the objective expectation of the contracting party. *See Bennett*, 869 F.2d at 22 (contract clause which indicated that employee could be terminated "for cause" under certain circumstances did not change effect of another clause which indicated that under the actual circumstances employee could be terminated without cause)

Speaking objectively, the interest the plaintiffs have in their agreements with the City in this case lacks the quality of permanence necessary to give the plaintiff a special federal constitutionally protected property interest in the continuation of contract benefits. The plaintiffs here bargained for a contract which gave the City the right to terminate at any time, for its convenience, simply by giving notice to the plaintiffs that it was doing so. *Accord Linan–Faye*, 49 F.3d at 932; *S & D Maintenance*, 844 F.2d at 968. In this situation, WDC could have nothing more than a hopeful expectation that contract benefits would continue into the future. *See id.*

Likewise, plaintiffs' attempts to conjure up a protected "status" by emphasizing the "interdependence" of the contracts at the root of this controversy and commitments the City has to the state and federal governments and those WDC has to other entities which have committed to provide funding for the project are unavailing. Most contracts between two or more parties are part of a broader network of relationships between various entities. The acceptance of this "interdependence" as a "status" for WDC equivalent to that of welfare beneficiaries or tenured teachers would be to open the floodgates to the "wholesale federalization" of public contract law. *Reich*, 883 F.2d at 242. This the court will not do.

Moreover, the plain meaning of the termination for convenience clause nullifies any argument by the plaintiffs that the contract could be terminated only for cause, and therefore confers a federal constitutionally protected property rights. *See S & D Maintenance*, 844 F.2d at 968. Plaintiffs are thus unable to fit this contract into the second category of contracts which confer upon parties contracting with public entities federally protected rights. *Linan–Faye*, 49 F.3d at 932. Therefore, plaintiffs cannot show any constitutional interest in this contract, and therefore cannot avail themselves of the sword of the Fourteenth Amendment via § 1983 on this basis. Plaintiffs' § 1983 claim must be dismissed.

This action is remanded to the Rhode Island state court, because this court lacks jurisdiction over the matter once the § 1983 claim is dismissed, and this court will not exercise pendent jurisdiction over the remaining state law breach of contract claims. 28 U.S.C.A. § 1447(c) (West 1994) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The Clerk of this Court will send a certified copy of the Order of Remand to the Rhode Island Superior Court. The parties will bear their own costs.